# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3083

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES,

*Plaintiff-Appellant,*

v.

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 1639—**Arlander Keys**, *Magistrate Judge.*

———————

ARGUED DECEMBER 5, 2003—DECIDED FEBRUARY 12, 2004

———————


Before FLAUM, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges*.

FLAUM, *Chief Judge*. The Brotherhood of Maintenance of Way Employees ("BMWE") represents maintenance of way workers, including employees of the Union Pacific Railroad Company ("UP"). BMWE filed suit in the district court alleging that UP violated the Railway Labor Act ("RLA") by refusing to refer certain disputes to expedited arbitration. UP responded by filing a counterclaim against BMWE, seeking to enjoin them from engaging in a strike, work stoppage, picketing, or other form of self-help against UP over the dispute. The district court denied BMWE's request

for declaratory relief and granted UP's motion for a preliminary injunction to stop BMWE members from striking. BMWE argues that the district court misapplied the RLA and its attendant case law and that the injunction was an inappropriate remedy under the Norris-LaGuardia Act. For the reasons stated herein, we affirm the judgment of the district court.

## I. Background

BMWE and UP are parties to a collective bargaining agreement ("CBA") which provides that, with limited exceptions, UP must hire BMWE members to perform all work in connection with the construction, maintenance, repair and dismantling of tracks, structures, and other facilities used in the performance of UP's common carrier service. On October 30, 2001, UP gave BMWE notice that UP would be contracting out work in connection with establishing a new facility in Rochelle, Illinois, to non-BMWE members under one of the CBA's exceptions. BMWE did not agree that the exception applied, and BMWE threatened to strike. Eventually, the parties entered into a settlement agreement to end the dispute. The settlement agreement provided that UP could use contract workers, but if a BMWE employee with seniority and the appropriate credentials requested work on the Rochelle project, UP would create a position for that employee for the period of time that contractors were performing work.

While the settlement agreement may have resolved the parties' disputes over the CBA, it was only a matter of time before new disagreements arose over the settlement agreement itself. In the fall of 2002, UP began hiring fewer workers than BMWE believed the settlement agreement required. In response to BMWE's objections, UP argued, among other things, that the settlement agreement required only that UP provide a number of BMWE positions

equal to the number of contractors working, not that all eligible BMWE workers be given jobs.

BMWE challenged UP's interpretation of the settlement agreement. BMWE offered to arbitrate its disagreements with UP in an expedited arbitration before a Special Board of Adjustment ("SBA"), pursuant to RLA § 3 Second. 45 U.S.C. § 153 Second (West 2003). UP agreed that the dispute should be arbitrated, but refused expedited arbitration and offered instead to participate in the arbitration procedures that were outlined in the CBA. BMWE declined this offer, stating that the arbitration procedures in the CBA would take more than three years to complete, whereas the expedited arbitration could be completed in a few months. However, because the contractual time limit to file claims under the CBA was about to expire, BMWE did file individual claims under the procedures outlined in the CBA, which UP then offered to arbitrate.

BMWE refused UP's offer to arbitrate the individual claims, asserting that arbitration of individual claims would not provide an authoritative determination of the meaning of the settlement agreement. BMWE also refused to arbitrate these claims because it was concerned that it would be difficult to identify particular employees who could be claimants and that certain employees would lose health insurance coverage and seniority rights that could not be retroactively restored.

BMWE then filed suit in the district court, requesting declaratory judgment that the RLA required UP to participate in expedited arbitration. UP filed a counterclaim requesting that the district court enter a preliminary injunction against a threatened BMWE strike. After a hearing, the magistrate judge denied BMWE's motion for relief and granted UP's motion for a preliminary injunction. BMWE now appeals both decisions.

## II.  Discussion

### A.  *Declaratory Relief*

The RLA grants exclusive jurisdiction to resolve "minor" disputes regarding railway labor agreements to arbitrators on the National Railroad Adjustment Board or adjustment boards established by an employer and a union. *See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303-04 (1989). In contrast, to resolve "major" disputes the RLA requires the parties to submit to a lengthy process of bargaining and mediation, during which they must maintain the status quo. *Bhd. of Maint. of Way Employees v. Atchison, Topeka & Santa Fe Ry. Co.*, 138 F.3d 635, 638 (7th Cir. 1998). In the context of interpreting classes of controversy in railway labor disputes, these terms are not used in their ordinary sense; they are terms of art in the case law under the RLA. *Chi. & N.W. Transp. Co. v. Ry. Labor Executives' Ass'n*, 908 F.2d 144, 148 (7th Cir. 1990). Minor disputes are those disputes regarding the interpretation or application of existing railway labor agreements. *Consol. Rail Corp.*, 491 U.S. at 303; *Chi. & N.W. Transp. Co.*, 908 F.2d at 148. "Where an employer asserts a contractual right to take a contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major." *Consol. Rail Corp.*, 491 U.S. at 307.

It is uncontested that this case presents only a minor dispute regarding the interpretation of BMWE's and UP's settlement agreement. Although UP's interpretation of the settlement agreement is subject to challenge, UP's position is not so obviously insubstantial as to constitute the sort of departure from an existing agreement that compels the inference that UP is trying to circumvent the major dispute procedures of the RLA. Accordingly, the Court con-

cludes that the disputes over the settlement agreement as well as the parties' disagreement over the availability of expedited arbitration before an SBA are minor disputes. Therefore, the district court was divested of jurisdiction over BMWE's claim for a declaration that UP violated Section 2 First of the RLA by not submitting to expedited arbitration. By virtue of the fact that the underlying disputes are minor and therefore subject to the mandatory dispute resolution procedures set forth in Section 3 of the RLA, 45 U.S.C. § 153, the district court properly denied BMWE's motion for declaratory relief.

## B. Preliminary Injunction

In reviewing a district court's grant or denial of a preliminary injunction, we review the district court's findings of fact for clear error, its balancing of the factors for a preliminary injunction under the abuse of discretion standard, and its legal conclusions *de novo*. *United Air Lines v. Int'l Ass'n of Machinist and Aerospace Workers*, 243 F.3d 349, 360 (7th Cir. 2001). BMWE does not argue that the district court improperly balanced the factors in granting the injunction, rather BMWE's appeal is premised on its belief that the district court misinterpreted and misapplied the relevant law.

Although the selected adjustment board enjoys exclusive jurisdiction to resolve minor disputes under the RLA, district courts are granted jurisdiction over minor disputes to the extent that they may enjoin strikes by railway workers. *Consol. Rail Corp.*, 491 U.S. at 304. BMWE argues that the district court erred by granting UP a preliminary injunction for two reasons. First, BMWE asserts that when UP refused expedited arbitration, UP violated its duty under Section 2 First of the RLA, to exert "every reasonable effort" to make and maintain agreements and settle disputes. *See* 45 U.S.C. § 152 First (West 2003). Specifically, BMWE argues that

UP has rejected the manner of arbitrating the parties' dispute that would most efficiently and comprehensively resolve the disagreement.[1] Second, BMWE claims that Norris-LaGuardia Act ("NLGA") deprived the district court of jurisdiction to enter an injunction because Section 8 denies injunctive relief to any party in a labor dispute who fails to "make every reasonable effort to settle" the dispute. 29 U.S.C. § 108 (West 2003).

Section 2 First of the RLA provides that carriers and unions must "exert every reasonable effort to . . . settle all disputes . . . in order to avoid any interruption to commerce or to the operation of any carrier." 45 U.S.C. § 152 First (West 2003). The Supreme Court has considered Section 2 First analogous to the "duty under the National Labor Relations Act to bargain in good faith." *Chi. & N.W. Transp. Co. v. United Transp. Union*, 402 U.S. 570, 574-75 (1971). It is a substantive legal duty that is enforceable by the courts and requires more than just strictly adhering to the duties set forth in other parts of the RLA or in applicable collective bargaining agreements. *See United Air Lines*, 243 F.3d at 349 (holding that a union has an obligation to discourage or prevent a slowdown despite the union's contention that it did not initiate the slowdown or have a legal duty to end it).

Similarly, the NLGA contains a provision preventing parties that have failed to negotiate in good faith from obtaining injunctive relief. Section 8 of the NLGA provides that "[n]o restraining order or injunctive relief shall be granted to any complainant who has failed to . . . make

---

[1] BMWE's claim for a declaration, which this Court lacks jurisdiction to consider, put forth this same argument. However, as explained above, we have jurisdiction to consider the argument to the extent that it impacted the district court's decision to enjoin a workers' strike.

every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108 (West 2003).

According to BMWE, UP's refusal to accept expedited arbitration violates its duties under the RLA and NLGA to make all reasonable efforts to settle disputes and therefore UP should not have been granted an injunction. We disagree.

While UP has a duty to arbitrate the dispute in good faith, there is no support for BMWE's position that UP must agree to arbitrate the dispute through the fastest and most effective means available. Understandably, BMWE would prefer an expedited arbitration of this matter. However, such a preference does not warrant forcing UP to either accede to BMWE's demands or allow BMWE to strike. This case is similar to *United Air Lines*, 243 F.3d at 349. In that case, the unionized workers engaged in a slowdown of work. When United filed for an injunction to force the union to end the slowdown, the union argued that United did not deserve an injunction because it did not take the reasonable step of disciplining the employees responsible for the slowdown. This Court disagreed, holding that it would not be reasonable to require United to discipline its employees because then an "injunction could *never* issue against a union, since in virtually every case an employer presumably could take some such measures." *Id.* at 364. In other words, the law requires that a party make every *reasonable* effort, not every *conceivable* one.

In this case, the parties entered into an agreement to arbitrate individual employee claims with a specific arbitration procedure. Because BMWE now considers that procedure to be too time consuming and not as efficient as an expedited arbitration of general contract claims, it expects UP to agree or suffer a strike. Although UP's agreement

with these demands would certainly end the dispute, forcing such agreement exceeds the bounds of the "every reasonable effort" requirement. If we were to hold otherwise, unions could always force an employer into an unbargained-for dispute resolution or else claim that the employer was not acting reasonably. Even though the duty to exert every reasonable effort requires a party to do more than discharge its legal obligations, the duty does not mandate that a party already engaging in good-faith negotiation participate in a dispute resolution that directly circumvents a contract voluntarily entered into by both parties.

There is no evidence of bad faith on the part of UP. UP has offered to arbitrate the individual claims of BMWE workers, which are those claims that have been handled in the proper manner based on the CBA. Provisions of the CBA and RLA provide mechanisms for resolving the parties' disputes, but BMWE chose not to avail itself of those mechanisms. UP's refusal to submit to expedited arbitration does not violate the RLA. Furthermore, Section 8 of the NLGA does not bar UP from obtaining an injunction. Accordingly, we conclude that the district court properly held BMWE to its duty under the RLA to avoid interrupting commerce.

## III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*