In the

# United States Court of Appeals
### For the Seventh Circuit

No. 04-2797

J.W. PETERS, INC.,

*Plaintiff-Appellant,*

*v.*

BRIDGE, STRUCTURAL AND REINFORCING
IRON WORKERS, LOCAL UNION 1, AFL-CIO,
ASSOCIATED STEEL ERECTORS OF CHICAGO,
ILLINOIS, and JOINT ARBITRATION BOARD,
established by the International Association
of Brick, Structural, Ornamental and Reinforcing
Iron Workers, Local Union 1 and the Associated
Steel Erectors of Chicago, Illinois,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 2932—**Milton I. Shadur**, *Judge.*

ARGUED JANUARY 4, 2005—DECIDED MARCH 1, 2005

Before FLAUM, *Chief Judge,* and EVANS and WILLIAMS,
*Circuit Judges.*

FLAUM, *Chief Judge.* Plaintiff-appellant J.W. Peters, Inc.
("Peters") sought a declaratory judgment that it effectively
repudiated its pre-hire agreement with defendant-appellee
International Association of Bridge, Structural and Rein-

forcing Iron Workers, Local Unit 1 ("Union"). Peters also moved to stay arbitration proceedings initiated by the Union before defendant-appellee Joint Arbitration Board ("JAB"), a body created by the Union and defendant-appellee Associated Steel Erectors of Chicago, Illinois ("Associated Steel Erectors"), a multi-employer bargaining unit, to resolve grievances arising out of their collective bargaining agreement. The district court denied Peters's requested relief and dismissed the action. For the reasons stated herein, we vacate the district court's order.

## I. Background

Since 1970, Peters has been a signatory to a pre-hire agreement between the Union and Associated Steel Erectors governed by § 8(f) of the National Labor Relations Act, 9 U.S.C. § 158(f) ("NLRA" or "Act").[1] The pre-hire agree-

---

[1] A pre-hire agreement is a contract agreed to by a union and an employer before the workers to be covered by the contract have been hired or before the union has attained majority status among the firm's employees. *NLRB v. Bufco Corp.*, 899 F.2d 608, 609 n.1 (7th Cir. 1990); *NLRB v. O'Daniel Trucking Co.*, 23 F.3d 1144, 1146 n.1 (7th Cir. 1994). These agreements generally are illegal, except in the construction industry which enjoys a statutory exemption under § 8(f). *Martin v. Garman Constr. Co.,* 945 F.2d 1000, 1001 n.3 (7th Cir. 1991).

As the Supreme Court has explained, "[o]ne factor prompting Congress to enact § 8(f) was the uniquely temporary, transitory and sometimes seasonal nature of much of the employment in the construction industry. Congress recognized that construction industry unions often would not be able to establish majority support with respect to many bargaining units." *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 266 (1983) (citing legislative history). "Congress was also cognizant of the construction industry employer's need to know his labor costs before making

(continued...)

ment establishes rates of pay, wages, hours of employment, fringe benefit contributions and other terms and conditions of employment for Union members.

On December 12, 2002, Peters executed a compliance agreement with the Union, which extended the terms of the existing pre-hire agreement—set to expire on May 31, 2003—through May 31, 2006. The December 12, 2002 compliance agreement provides in relevant part:

> The Employer acknowledges the Union's claim and evidence that the Union represents an uncoerced majority of the Employer's employees in a unit acknowledged and stipulated as appropriate . . ., and therefore and hereby recognizes the Union as the sole and exclusive collective bargaining agent for all journeymen and apprentice iron workers now or hereafter employed in the bargaining unit with respect to and for the purpose of establishing rates of pay, hours of employment, fringe benefit contributions and other terms and conditions of employment within the geographical jurisdiction in which the Union is authorized to act or does act as such representative. . . .

(Ex. 3, ¶ 1.) The compliance agreement also sets forth the following terms for terminating the pre-hire agreement:

> This Compliance Agreement shall remain in effect and shall be governed by Principal Agreements entered into in the future and covering future time periods unless and until it has been terminated by either party giving written notice of termination to the other at least four (4) months prior to the termination date of the applica-

---

[1] (...continued)
the estimate upon which his bid will be based and that the employer must be able to have available a supply of skilled craftsmen for quick referral." *Id.*

ble Principal Agreement in which event this Agreement shall terminate on the last day of the then applicable Principal Agreement. In the event no such timely notice is given this Agreement shall remain in effect until terminated in accordance with its terms. Any such notice as hereinabove provided for in this article whether specifying a desire to terminate or to change at the end of the current contract year shall have the effect of terminating this agreement at such time.

(*Id.* ¶ 4.)

On April 2, 2004, Peters sent the Union a letter purporting to repudiate the pre-hire agreement, effective immediately. Peters asserted that it had "not employed any Ironworkers since 2003" and, during the past two years, had "not employed any Ironworkers for a period of more than 30 days." (Joint Appendix at 9.) Peters also stated that it had "no intention of employing any ironworkers . . . in the future." (*Id.*) Peters sought confirmation of this repudiation from the Union, stating:

While J.W. Peters, Inc. could assume that this letter effects an end to any and all contractual relationships between J.W. Peters, Inc. and the Ironworkers Union, we would appreciate a written confirmation of this fact from the Union. If we do not receive confirmation of this fact by April 16, 2004, we will have to assume that the Ironworkers Union continues to claim to represent employees of J.W. Peters, Inc. and therefore, we will be forced to file the appropriate petition with the NLRB challenging any such claims.

(*Id.* at 10.)

Peters's purported repudiation set into motion a series of actions by both Peters and the Union. The Union initially responded by letter dated April 9, 2004, insisting that the pre-hire agreement remained in full force because Peters failed to submit written notice of termination at least four

months prior to May 31, 2003.

The Union did not receive a further response from Peters. On April 14, 2004, the Union filed a grievance and request for arbitration with the JAB pursuant to § 38 of the pre-hire agreement. (Ex. 2 at 44.) The arbitration request advised that "there is a dispute between [the Union] and J.W. Peters & Sons, Inc. as to whether the Contractor can now terminate its Compliance Agreement with Iron Workers, Local 1." (J.A. at 35.) The Union requested that a hearing be scheduled before the JAB as soon as possible and that Peters be notified to appear and participate in that hearing. (*Id.*)

The following day, April 15, Peters filed a representation petition with the Regional Director of the National Labor Relations Board ("NLRB" or "Board") in Chicago pursuant to § 9(c) of the NLRA.[2] In response to that peti-

---

[2] Section 9(c) outlines two situations in which the Board may determine questions of representation. First, an employee, group of employees, or labor organization may file a petition seeking to unseat an existing representative. *See* 29 U.S.C. § 159(c)(1)(A). Second, an employer may initiate a petition to determine representation. The statute provides, in pertinent part:

> Whenever a petition shall have been filed . . . by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a) of this section; the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret

(continued...)

tion, the Regional Director issued notice of a representation hearing for April 29, 2004. Peters subsequently withdrew its petition and refiled an identical petition on April 21. The Regional Director rescheduled the representation hearing for May 5, 2004.

On April 23, 2004, while the representation petition was pending, Peters filed a complaint in federal district court seeking a declaratory judgment that the collective bargaining agreement between Associated Steel Erectors and the Union had been repudiated and was no longer in effect with respect to Peters. The complaint alleged that through their participation in, and conducting of, a hearing, "and because there can be no JAB hearing without the existence of a valid and enforceable collective bargaining agreement," Associated Steel Erectors and the JAB "maintain[ ] that there is a collective bargaining agreement in effect between J.W. Peters, Inc., and the Iron Workers Union." (Compl. ¶¶ 12, 13.) Peters further alleged:

> Because the Defendants seek to compel the Company to arbitration, and because, if the Pre-hire Agreement has been properly repudiated, there is no contractual obligation to participate in arbitration, Plaintiff, J.W. Peters, Inc., brings this action seeking a declaration that the Pre-hire Agreement has been properly and effectively repudiated and is no longer in effect.

(*Id.* ¶ 15.)

On April 26, 2004, Peters filed a separate motion in the district court to stay the arbitration proceedings before the JAB, arguing that the JAB lacked jurisdiction.

On April 29, 2004, following a hearing, the district court

---

(...continued)
    ballot and shall certify the results thereof.
§ 159(c)(1)(B).

denied Peters's motion to stay the arbitration proceedings and dismissed the action. Citing this Court's decision in *NLRB v. Bufco Corp.*, 899 F.2d 608 (7th Cir. 1990), the district court concluded that Peters's purported unilateral repudiation of the pre-hire agreement was a "nullity and totally invalid." (J.A. at 20.) It held that the pre-hire agreement remained "in full force and effect and is in turn governed by the most recent Agreement between the Associated Steel Erectors of Chicago, Illinois and Union for the period beginning June 1, 2003, and ending May 31, 2006." (*Id.* at 20-21.)

On May 4, 2004, the day before the rescheduled representation hearing, the NLRB Regional Director dismissed Peters's representation petition, finding that further proceedings were not warranted because "there are no employees employed by the Employer in the bargaining unit at this time, and there is no evidence that there have been employees employed during the relevant eligibility period." (J.A. at 37.)

On May 13, 2004, Peters filed a Rule 59(e) motion to amend the district court's April 29 order, relying in part on the Regional Director's May 4 dismissal of its petition as "new evidence not previously available." On May 17, Peters sought review by the Board of the dismissal of the representation petition. On May 20, Peters sought leave to file an amended complaint for declaratory judgment in the district court, incorporating "the particulars relevant to the Plaintiff's employment of Defendant Union's bargaining unit members." (J.A. at 24.)

On June 3, 2004, while its motions were pending in the district court, Peters filed an unfair labor practice charge against the Union with the NLRB. Peters alleged that the Union had filed grievances and attempted to enforce a collective bargaining agreement that Peters had lawfully repudiated on April 2, 2004, in violation of

§§ 8(b)(1)(A) and (b)(2) of the NLRA.

On June 14, 2004, the district court denied Peters's motion to amend judgment and motion to file an amended complaint. The court concluded that its prior ruling would remain in effect "unless and until . . . the Board itself holds that the unilateral repudiation is effective in this circumstance." (J.A. at 72.)

This appeal followed.

## II. Discussion

In reviewing a decision to deny declaratory or injunctive relief, we review the district court's findings of fact for clear error and its legal conclusions de novo. *Bhd. of Maint. Way Workers v. Union Pac. R.R. Co.*, 358 F.3d 453, 457 (7th Cir. 2004). The parties raise only legal issues on appeal.

## A. Jurisdiction

We begin with the threshold question of jurisdiction. Despite the concerns expressed by the district court about the existence of a live controversy, both parties argue that the district court had subject matter jurisdiction to resolve the dispute that was before it. We agree.

Section 301 of the Labor Management Relations Act ("LMRA") provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizen-

ship of the parties.

29 U.S.C. § 185(a).

In *International Brotherhood of Electrical Workers, Local 481 v. Sign-Craft, Inc.*, this Court held that "under § 301(a) any disputes about the meaning or validity of collective bargaining agreements come within the jurisdiction of the federal courts." 864 F.2d 499, 502 (7th Cir. 1988) (holding that district court had jurisdiction over claim filed by union alleging that employer improperly repudiated collective bargaining agreement between union and multi-employer association), *overruling NDK Corp. v. Local 1550 of the United Food & Commercial Workers Int'l Union*, 709 F.2d 491 (7th Cir. 1983).

Although the Supreme Court subsequently held in *Textron Lycoming Reciprocating Engine Div. v. United Automobile Workers*, 523 U.S. 653, 657 (1998), that "'[s]uits for violation of contracts' under § 301 are not suits that claim a contract is invalid, but suits that claim a contract has been violated," *Textron* does not foreclose jurisdiction in this case. In *Textron*, the union sought a declaratory judgment that its collective bargaining agreement with employer Textron was invalid after Textron announced that it would subcontract out a substantial volume of work, causing half of the union members to lose their jobs. *Id.* at 655. The union alleged that Textron had fraudulently induced it to sign the agreement by concealing its plans to subcontract work. *Id.* The union did not allege, however, that either it or Textron ever violated the terms of the collective bargaining agreement. *Id.* The Court concluded: "Because the Union's complaint alleges no violation of the collective-bargaining agreement, neither we nor the federal courts below have subject matter jurisdiction over this case under § 301(a) of the Labor-Management Relations Act." *Id.* at 661-62.

The Supreme Court specifically stated, however, that "a

declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid" and emphasized that, in the case before it, "the Union neither alleges that Textron has violated the contract, nor seeks declaratory relief from its own violation." *Id.* at 658. In this case, by contrast, Peters was accused of violating the terms of the collective bargaining agreement by attempting to terminate the collective bargaining relationship without providing proper notice. Peters sought declaratory relief from this alleged violation. Thus, this is a suit "for violation of contracts" within the meaning of § 301. Moreover, unlike in *Textron*, where the Court found that there was no evidence of a concrete dispute between the parties over the contract's voidability at the time the suit was filed, *id.* at 660-61, here, there is undoubtedly a ripe dispute between the parties. The district court therefore had jurisdiction to resolve the legal issues and decide whether Peters's unilateral repudiation was valid, or whether it should allow the case to proceed to arbitration before the JAB. We now turn to that question.

## B.  Unilateral Repudiation

This Court has recognized that, generally, a signatory to a § 8(f) pre-hire agreement "is bound to its terms for the duration of the agreement unless the employees covered by that agreement reject the signatory union in a Board conducted election." *Bufco*, 899 F.2d at 610 (relying on the decision of the Board in *John Deklewa & Sons*, 282 NLRB 184 (1987), *enf. sub nom. Int'l Ass'n of Bridge Workers, Local 3 v. NLRB,* 843 F.2d 770 (3d Cir. 1988)). *Deklewa* marked a significant change in the policy of the NLRB. Prior to that decision, the Board interpreted § 8(f) as permitting the unilateral repudiation of pre-hire agreements until the union achieved majority support. *Id.* at 609. In *Bufco*, we determined that the Board had not been

precluded by Supreme Court or Seventh Circuit precedent from reversing its prior policy, and stated that "we must enforce the Board's *Deklewa* rule if we deem it to be based upon a reasonably defensible construction of the Act." *Id.* at 611. Finding it "reasonable and consistent with the Act," we joined several of our sister Circuits in accepting the Board's *Deklewa* rule. *Id.*

The issue before us now is whether this case falls within a recognized exception to the *Deklewa* rule in situations involving bargaining units of one or no employees.[3] Peters points to several decisions in which the Board articulated this so-called "one-man unit" rule. In *Stack Electric, Inc.*, 290 NLRB 575 (1988), the Board explained:

> It is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) of the Act, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain.

*Id.* at 577 (citations omitted).

The Board first explained the basis for this rule in *Foreign Car Center, Inc.*, 129 NLRB 319, 320 (1960) ("[T]he principle of collective bargaining presupposes that there is more than one eligible person who desires to bargain. The Act therefore does not empower the Board to certify a one-man unit.") (internal citations omitted), *quoted in Stack Electric*, 290 NLRB at 577.

The Board also applied the one-man unit rule in *Haas Garage Door Co.*, 308 NLRB 1186 (1992). In that case, the employer was a member of a multi-employer association,

---

[3] We noted in *Martin* that our *Bufco* holding had not yet been modified in relation to the one-man unit rule but expressly declined to address the issue. 945 F.2d at 1005, 1006.

through which it signed a § 8(f) agreement effective from 1990 through 1993. *Id.* at 1186. At some point during that period, the employer refused to execute the collective bargaining agreement despite explicit requests from the union that it do so. *Id.* The employer also refused to furnish information requested by the union, arguing that it was not bound by the agreement because it had no employees doing unit work. *Id.* The administrative law judge ("ALJ") found that the employer had violated §§ 8(a)(5) and (1) of the Act. *Id.* Relying on the one-man unit rule, the Board reversed the ALJ's decision, stating: "[W]e disagree with the judge's finding that even if an employer has no employees doing unit work it cannot repudiate an 8(f) contract." *Id.* at 1187. Because the Board found no evidence that the employer had more than one employee performing unit work at all material times, it concluded that the employer "did not violate Section 8(a)(5) and (1) by repudiating the contract, by refusing to execute the contract, or by refusing to furnish information to the Union." *Id.*; *see also Searls Refrigeration Co.*, 297 NLRB 133, 135 (1989) (upholding ALJ's conclusion that employer's mid-term repudiation of a § 8(f) agreement did not violate NLRA because the "appropriate unit consisted of no employees for approximately 2 years"); *Garman Constr. Co.*, 287 NLRB 88, 89 (1987) (relying on one-man unit rule to affirm ALJ's dismissal of allegations that employer violated §§ 8(a)(5) and (1) by repudiating a § 8(f) contract and withdrawing recognition from union).

Appellees argue that these NLRB decisions stand for the limited proposition that an employer's unilateral repudiation of a collective bargaining agreement applicable to a one or no-man bargaining unit would not be a violation of the employer's statutory duty to bargain. According to appellees, these cases do not speak to the continued validity of the collective bargaining agreement itself, or to the employer's contractual obligations thereunder. The Board's decisions do not support appellees'

argument. While many of its decisions specifically addressed the statutory duty to bargain, the Board has not limited the one-man unit rule to excusing an employer from this particular duty. Rather, the Board's decisions explicitly allow an employer, more generally, to repudiate a pre-hire agreement and discontinue its duties under the agreement where it employs no more than one employee in the relevant unit. *See, e.g.*, *Sunray Ltd.*, 258 NLRB 517, 518 (1981) ("[T]he Board will not enforce a contract covering a single-person unit. Nor will we certify or find appropriate a single-person unit in a representation proceeding."); *SAC Constr. Co., Inc.*, 235 NLRB 1211, 1220 (1978) (where employer had a unit consisting of only one employee, it "did not violate Section 8(a)(1) and (5) of the Act by discontinuing payments to the health and welfare, apprenticeship, and pension fringe benefit plans"), *enforcement denied on other grounds, NLRB v. SAC Constr. Co., Inc.*, 603 F.2d 1155 (5th Cir. 1979).

Peters urges this Court to recognize explicitly the one-man unit exception to the Board's *Deklewa* rule and apply it to this case. We have traditionally extended the Board deference in fashioning national labor policy and find no reason to proceed otherwise in this case. *See Bufco*, 899 F.2d at 609. The Board's decisions applying the one-man unit rule accord with the principles of collective bargaining and the terms of the NLRA. *See, e.g.*, 29 U.S.C. § 159(a) ("Representatives designated or selected for the purposes of collective bargaining by the *majority* of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the *employees* in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment") (emphases added). Moreover, as a matter of common sense, it seems illogical to continue to bind Peters to a pre-hire agreement simply because it has no employees who could reject the Union as their bargaining representative in

a Board-conducted election. We therefore conclude that Peters's unilateral repudiation of the pre-hire agreement was lawful under the one-man unit rule and hold that Peters's repudiation of the contract relieved it of its contractual obligation to arbitrate before the JAB.

Only one other appellate court has applied the one-man unit rule in a similar case. *See Laborers Health & Welfare Trust Fund v. Westlake Dev.*, 53 F.3d 979 (9th Cir. 1995). Noting "the unique circumstances of a single-employee bargaining unit in the construction industry," the court held in *Westlake* that "[a] construction industry employer who employs a single employee pursuant to a Section 8(f) pre-hire agreement is entitled to repudiate the agreement by conduct sufficient to put the union and the employee on notice that the agreement has been terminated." *Id.* at 982 (quoting *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 565-66 (9th Cir. 1984)). Reviewing the relevant NLRB authority, the Ninth Circuit concluded:

> Clearly these post-*Deklewa* decisions by the Board speak not only in terms of the standard application of the one-employee unit rule (where there is no statutory obligation to bargain in a representation proceeding), but also directly in terms of lawful unilateral repudiation of section 8(f) agreements where there is a single (or no) employee unit. We adopt the Board's reasoning in concluding that Westlake, a "one-employee employer," lawfully repudiated the CBA.

*Id.* at 983.

Because the employer had lawfully repudiated the collective bargaining agreement, the court held that the employer was relieved of all of its obligations thereunder, including its duties to pay into a trust fund and to arbitrate disputes arising out of the agreement. *Id.* at

984 (concluding that the employer's repudiation rendered the collective bargaining agreement "void, not merely voidable"). Thus, the Ninth Circuit explicitly rejected the argument appellees make here—that the one-man unit rule relieves an employer of its statutory duty to bargain but does not allow it to invalidate the agreement itself.

Appellees take issue with the Ninth Circuit's reasoning in *Westlake*, arguing that there is a "critical distinction" between the statutory duty to bargain under § 8(a)(5) of the Act and an employer's contractual obligations under a pre-hire agreement. Appellees rely primarily on the following statement by the Supreme Court in *Jim McNeff, Inc. v. Todd*:

> There is a critical distinction between an employer's obligation under the Act to bargain with the representative of the majority of its employees and its duty to satisfy lawful contractual obligations that accrued after it enters a prehire contract.

461 U.S. 260, 267 (1983). Appellees read too much into this language. In *McNeff,* the Court was discussing its prior decision in *NLRB v. Local 103, International Association of Bridge Workers (Higdon)*, 434 U.S. 335 (1978), in which it affirmed the Board's view that a pre-hire agreement does not make a union the "representative of an employer's employees" under § 8(b)(7)(C) of the NLRA.[4] *McNeff*, 461 U.S. at 266-67. The Court explained that only the former obligation—the duty to bargain—was treated in *Higdon*, and that different concerns animated its analysis in the case before it. *Id.* at 267.

---

[4] Section 8(b)(7)(C) prohibits a union from picketing an employer unless it is the certified representative of the employer's employees. *See* 29 U.S.C. § 158(b)(7)(C).

The Court held in *McNeff* that monetary obligations assumed by an employer under a pre-hire agreement could be recovered in a § 301 action brought by the union *prior to* the repudiation of the contract. *Id.* at 271-72. That decision did not address whether an employer who employs one or no employees may lawfully repudiate a pre-hire agreement. *McNeff* was decided several years prior to the Board's decision in *Deklewa*, and the Court assumed without deciding that a party to a § 8(f) agreement could repudiate such an agreement.[5] Significantly, in *McNeff*, the employer "never manifested an intention to void or repudiate the contract," and the record showed conclusively that the employer "accepted the benefits of the prehire agreement and misled the union of its true intention never to fulfill its contractual obligations." *Id.* at 270. This decision does not support appellees' argument that repudiation of the pre-hire agreement leaves unaffected an employer's contractual obligations under the agreement.

Appellees also argue that *Westlake* is contrary to this Court's decision in *Martin v. Garman Construction Co.*, 945 F.2d 1000 (7th Cir. 1991). Our opinion in *Martin* followed an earlier decision by the Board in *Garman Construction Co.*, 287 NLRB 88. In that case, the parties had entered into a collective bargaining agreement in 1978 governing fringe benefit contributions to several pension and trust funds on behalf of the union members that Garman employed. *Id.* at 89. Because Garman did not provide timely notice of termination, that agreement was automatically extended from 1981 to 1984. *Id.* at 89 & n.6. During the relevant

---

[5] *See McNeff*, 461 U.S. at 271 n.13 ("We need not consider in this case whether considerations properly cognizable by a court under § 301 might prevent either party, in particular circumstances, from exercising its option under § 8(f) to repudiate a prehire agreement before the union demonstrates majority status.").

period, Garman employed only one member of the union, and until September 1981, made regular, monthly contributions to the funds on behalf of this employee. *Id.* at 89. On September 3, 1981, however, the company sent a letter to the union stating that the agreement "is null and void as of the present date." *Id.* The union then brought a complaint before the Board, alleging that Garman violated Sections 8(a)(5) and (1) of the Act by repudiating the contract and withdrawing recognition from the union. *Id.* The remedy sought by the union included compensation to the funds for missed contributions. The ALJ found that Garman's repudiation was not an unfair labor practice and dismissed the complaint, relying on the one-man unit rule. *Id.* The Board affirmed on the same ground. *Id.*

At issue before this Court in *Martin* was the preclusive effect of the Board's decision on a separate action filed in district court by the trustee of the funds to recover money from the employer under ERISA.[6] The trustee had filed an ERISA suit in the district court prior to the Board's decision, and the district judge stayed proceedings pending the outcome of the Board's action, stating that she would give "collateral estoppel effect to the NLRB's determination that a contract existed between July 1, 1981 and May 31, 1984." *Martin*, 945 F.2d at 1002. Following the Board's decision, the district court held Garman liable for unpaid contributions to the funds during this period, and Garman appealed. *Id.* at 1003. This Court affirmed.

---

[6] *See* Employee Retirement Income Security Act, 29 U.S.C. § 1145. That provision states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Garman's argument on appeal was that the Board's decision had established the parties' rights under both the NLRA and ERISA, and that the district court failed to afford appropriate preclusive effect to the Board's decision. We rejected that argument on the ground that the Board lacked jurisdiction over the ERISA claim, which enjoys exclusive jurisdiction in the federal courts. *Id.* (citing 29 U.S.C. § 1132(e)(1)). We also explained that our decision rested on the statutory language and unique considerations present in the ERISA context, concerns that are not at issue here. *See id.* at 1005 ("[M]any of the defenses available under the NLRA or under traditional contract law do not fly under ERISA. The one-man rule may remain valid for purposes of unfair labor practice proceedings while counting for naught when the contract is cognizable under ERISA.").

As this Court explained in *Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, Congress added § 515 to ERISA in 1980 to address the problems that arose when employers repudiated pre-hire agreements and refused to make pension and welfare contributions. 870 F.2d 1148, 1152-53 (7th Cir. 1989) (en banc). That statute made employers' promises to contribute to such plans "enforceable 'to the extent not inconsistent with the law.'" *Id.* at 1153 (quoting 29 U.S.C. § 1145). "If the contract provides for the commission of unlawful acts, it will not be enforced." *Id.* (citation omitted). However, if "the employer simply points to a defect in its formation—such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union *and the consequent ineffectiveness of the pact under labor law*—it must still keep its promise to the pension plans." *Id.* (emphasis added), *quoted in Martin*, 945 F.2d at 1004. In other words, "nothing in ERISA makes the obligation to contribute depend on the existence of a valid collective bargaining agreement." *Id.*

Appellants have not claimed that Peters has refused to

comply with its obligations under ERISA; they have spoken solely in terms of Peters's contractual duty to arbitrate. Therefore, *Martin* does not restrict us from applying the Board's one-man unit rule in this context.

## III. Conclusion

For the foregoing reasons, the order of the district court is VACATED. We REMAND this case for proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*