In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2322

CREMATION SOCIETY OF ILLINOIS, INC.,

*Plaintiff-Appellant*,

*v.*

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL 727,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 2017 — **Jorge L. Alonso**, *Judge.*

ARGUED FEBRUARY 22, 2017 — DECIDED AUGUST 28, 2017

Before BAUER and WILLIAMS, *Circuit Judges,* and DEGUILIO,[*]
*District Judge.*

---

[*] Of the United States District Court for the Northern District of Indiana,
sitting by designation.

BAUER, *Circuit Judge.*    Sullivan Olson, Inc. ("Sullivan
Olson"), which is now Cremation Society of Illinois, Inc., filed
suit against the International Brotherhood of Teamsters Local
No. 727 ("the Union"), under Section 301 of the Labor Manage-
ment Relations Act ("LMRA"), 29 U.S.C. § 185(a), seeking a
declaration that it had properly repudiated and was no longer
bound by the collective bargaining agreement with the Union.
The Union counterclaimed for a confirmation of an arbitration
award and to compel arbitration pursuant to the LMRA and
the Federal Arbitration Act, 9 U.S.C. §§ 4 and 6. It also filed a
third-party complaint against Cremation Society. The district
court ruled in the Union's favor on cross-motions for summary
judgment. Cremation Society appeals the district court's
rulings. For the following reasons, we affirm.

## I.  BACKGROUND

### A.  Parties

Sullivan Olson operated a funeral home known as Olson
Burke/Sullivan Funeral & Cremation Center ("OBS") in
Chicago, Illinois, until it was purchased by Cremation Society
on December 31, 2013, merged into Cremation Society in April
2014, and ceased to exist as an entity thereafter. The Com-
pany's President and sole shareholder was Gerald Sullivan.
Sullivan is also the President and one of two shareholders of
Cremation Society (the other shareholder being his wife).
Cremation Society also conducts business in the funeral
services industry under the name OBS, and has nine other
locations in northern Illinois.

The Union is a labor organization affiliated with the
International Brotherhood of Teamsters. Sullivan Olson's

relationship with the Union began after a settlement stemming from an unrelated lawsuit brought by the trustee of the Union's benefit funds. The Union's bargaining relationship with Cremation Society terminated in 2007.

### B. Compliance Agreement and Collective Bargaining Agreement

On October 7, 2003, Sullivan Olson executed a Compliance Agreement, binding it to the terms and conditions of the Union's collective bargaining agreement ("CBA") with the Funeral Directors Services Association of Greater Chicago ("FDSA"). The Compliance Agreement provided that it would remain in effect until June 30, 2007, and from year to year thereafter. However, it could be terminated by either party upon written notice to the other at least 60 days prior to June 30 of 2007, or any subsequent year.

The CBA between the Union and the FDSA recognized that the Union was the exclusive collective bargaining agent for all employees performing "bargaining unit work." As defined in the CBA, "bargaining unit work" is "the performance of embalming, whether in training or licensed, funeral directing, whether training or licensed, and auto livery chauffeur services." The definition also explicitly includes "removals, transportation of remains, embalming, funeral directing and all other work historically done by the bargaining unit."

Article 19 of the CBA set out a grievance and arbitration procedure for "[a]ny complaint, grievance or dispute arising under or concerning the meaning, application, or compliance with the terms of this Agreement between the Employer and the Union and/or an employee." This article provides that, if

the employer cannot resolve the dispute in two required meetings, then the grievance may be referred to the Grievance Board ("Board"), which is made up of three individuals selected by the FDSA and three individuals selected by the Union. The Board is required to conduct a hearing and render a decision on the referred grievance. If the Board fails to hold a hearing or issues a split decision, the Union or employer may submit the matter to arbitration. Either a majority decision of the Board or a decision of the arbitrator is final and binding upon the parties.

### C. Grievances

On November 30, 2013, Sullivan Olson sent a letter to the Union, informing them that it was repudiating the Compliance Agreement and CBA. On December 19, 2013, a Union representative called Sullivan Olson to inquire about dues. Sullivan Olson responded by letter from its counsel on December 29, 2013, referencing the November 30, 2013, repudiation letter. In response, the Union sent a letter denying that the Compliance Agreement and CBA were no longer in effect. On February 13, 2014, the Union filed a grievance ("Grievance 3930"), complaining that Sullivan Olson had attempted to improperly repudiate the Compliance Agreement and CBA. The Union also alleged that Sullivan Olson failed to respond to the Union's request for documentation on the individuals performing bargaining unit work.

In January 2013, Sullivan Olson had a single employee on its payroll, funeral director Douglas Klein, who was a member of the bargaining unit represented by the Union. On December 16, 2013, Vicki Grantham, Cremation Society's Comptroller,

sent Klein an email stating that, as of December 30, 2013, he would be employed by Cremation Society, not Sullivan Olson. On March 10, 2014, Sullivan gave Klein a long-term termination memorandum, referencing a February 2014 incident, where Klein left the doors to his van wide upon while it contained a deceased person, and ongoing performance difficulties. The memorandum also notified Klein that Cremation Society would terminate him, effective August 31, 2014. On March 14, 2014, the Union filed another grievance ("Grievance 3621"). In this grievance, the Union alleged that Sullivan Olson violated the discipline and discharge provisions of the CBA.

Both grievances were referred to the Board because the parties were unable to come to a resolution on Grievance 3930 after the two required meetings, and Sullivan Olson completely refused to follow the grievance procedure for Grievance 3621. The Board scheduled a hearing for May 1, 2014; Sullivan Olson was provided notice but did not attend the hearing.

On May 2, 2014, the Board issued its decision. The Board sustained Grievance 3930, finding that the November 30, 2013, termination notice was not given within the time period of at least 60 days prior to June 30th of any subsequent contract year. The Board determined that Sullivan Olson was still bound by the Compliance Agreement until June 30, 2017, and from year to year thereafter until it provides timely notice to the Union. As for Grievance 3621, the Board ordered Sullivan Olson to meet with the Union to process the grievance within 30 days. After the Board's ruling, Sullivan Olson and Cremation Society refused to recognize the Union as the collective-

bargaining representative of any employees and have failed to process Grievance 3621.

### D.  Procedural History

After the Union filed Grievance 3621, Sullivan Olson filed a complaint on March 21, 2014, seeking a declaration that it had properly repudiated the CBA, and no longer was bound by the agreement with the Union. On May 23, 2014, the Union counterclaimed and filed a third-party complaint against Cremation Society, seeking to compel arbitration and enforce the Board's awards. The parties filed cross-motions for summary judgment.

The basis of Sullivan Olson's declaratory action was the National Labor Relations Board's "one-man unit rule," which allows an employer, who employs one or fewer unit employees on a permanent basis, to repudiate its contract with a union without affording it an opportunity to bargain. *See J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1*, 398 F.3d 967, 973 (7th Cir. 2005). Sullivan Olson argued that it properly repudiated the CBA because it terminated the agreement when it had only one bargaining unit employee.

The Union alleged that Sullivan Olson and Cremation Society constituted a "single employer" before the two companies merged. The Union argued that the repudiation was unlawful because the bargaining unit was never down to one employee when one considers the Cremation Society employees as conducting bargaining unit work. It also claimed that the repudiation was untimely under the provisions of the CBA and that Cremation Society remained bound by Article 19's

grievance procedure. In response, Sullivan Olson argued that, because the Union had operated as if Sullivan Olson and Cremation Society were two separate entities for at least a decade, the Union had impliedly waived, or was equitably estopped from asserting, the single-employer theory.

The district court granted summary judgment in favor of the Union on the cross-motions. First, the district court found that Sullivan Olson and Cremation Society failed to cite any pertinent authority in support of their implied waiver and equitable estoppel arguments or indicate that this is an area in which federal common law borrows from state law. Assuming that either of the defenses were applicable to this type of case, the district court found that there was no evidence to support their application here. Second, the district court concluded that Sullivan Olson and Cremation Society constituted a single employer. Third, it found that the Sullivan Olson and Cremation Society failed to rebut the Union's evidence that Klein was not the only permanent employee who performed bargaining unit work. Fourth, since there was no genuine dispute of material fact that Sullivan Olson and Cremation Society constituted a single employer prior to their merger and had more than one employee who performed bargaining unit work, Sullivan Olson's unilateral repudiation was not effective under the one-man unit rule. Therefore, Cremation Society was not relieved of its contractual obligation to arbitrate. Lastly, the district court determined that Grievances 3930 and 3621 were covered within the CBA, and confirmed the Board's awards.

Cremation Society moved to reconsider under Federal Rule of Civil Procedure 59(e), providing new arguments based on federal common law to support their waiver and equitable

estoppel defenses. The district court denied the motion, finding that all their arguments could have been presented before. This appeal followed.

## II.  DISCUSSION

We begin with a brief word about our jurisdiction. The LMRA provides for federal subject-matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization … without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Our review is limited and "strictly confined to the question [of] whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made." *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The question is only of arbitrability. *United Steel v. TriMas Corp.*, 531 F.3d 531, 535 (7th Cir. 2008). Therefore, we are "not to rule on the potential merits of the underlying claims, even if it appears to the court to be frivolous." *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013) (citation and alterations omitted).

We review a district court's grant of summary judgment *de novo*. *Rupcich v. UFCW Int'l Union, Local 881*, 833 F.3d 847, 853 (7th Cir. 2016) (citation omitted). Where, as here, the parties filed cross-motions for summary judgment, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Id.* (citation omitted). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Cremation Society provides two arguments that merit discussion: first, that the district court erred in concluding that Cremation Society and Sullivan Olson were a single employer;[1] and second, that the district court erred in finding that Douglas Klein was not the only permanent employee at Sullivan Olson performing bargaining unit work.

## A. Single-Employer Doctrine

First, Cremation Society argues that the district court erred in granting summary judgment to the Union because disputes of material fact remain in regards to the single-employer finding. Under the single-employer doctrine, "when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes." *Lippert Tile*, 724 F.3d at 946 (quoting *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998)). To determine whether two entities constitute a single employer, we consider four factors: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Id.* (citation omitted). No single factor is dispositive; we must weigh the totality of the circumstances. *Id.* at 946–947 (citation omitted). "Ultimately, single employer status is characterized by the absence

---

[1] Cremation Society also contends that the district court erred in denying its motion for summary judgment because the Union had impliedly waived, or is equitably estopped from asserting, a single-employer theory. Its argument is without merit, and thus we decline to consider it.

of an arm's length relationship found among unintegrated companies." *Id.* at 947 (citation omitted).

We conclude that the two companies are a single employer. First, when analyzing the interrelation of operations, the "day-to-day operational matters" are the most relevant. *Id.* Cremation Society and Sullivan Olson operated out of the same building; Cremation Society paid rent to Sullivan Olson for the use of space. The companies operated in the same geographic market, and both offered end-of-life services, but different products: Sullivan Olson predominately offered traditional burials while Cremation Society predominately offered cremation. However, Grantham's deposition testimony was that Cremation Society did some burials and some traditional funerals. The companies even kept charts of work titled "Cremation Society Work done by [Sullivan] Olson staff" and "[Sullivan] Olson Work done by Cremation Society staff." The companies shared the same time clock and computers. Both companies used the same phone number, although Cremation Society also advertised and used a toll-free phone number. The companies paid taxes separately under different tax identifications and maintained separate bank accounts, but this is not determinative. *See Moriarty v. Svec*, 994 F. Supp. 963, 970 (N.D. Ill. 1998) (concluding there was a single employer even though the owner maintained separate bank accounts), *aff'd*, *Moriarty*, 164 F.3d at 335. We conclude that the operations are more than sufficiently interrelated.

Second, the "common management" factor looks at "actual or active control, as distinguished from potential control, over the other's day-to-day operations … ." *Lippert Tile*, 724 F.3d at 947 (citation omitted). Here, both Sullivan Olson and Crema-

tion Society employees reported up the chain to the same managers and executives. The employees of both entities were part of the same organizational chart. Additionally, Cremation Society had an executive board that consisted of Gerald Sullivan, Donald Fritz, Mary Sullivan, and Katie Sullivan; Sullivan Olson did not have a separate executive board or board of directors. While a formal job title is not necessarily indicative of a person having actual management responsibility, *see id.*, Cremation Society admits its executive board was involved in managing both entities (and this is also evidenced by Grantham's deposition). We find that the common-management factor weighs in favor of a single-employer finding.

Third, we consider the centralized control of labor relations. In analyzing this factor, we consider who is responsible for hiring, firing and evaluating employees. *See id.* Grantham provided Human Resources services for both entities, including the process of hiring, firing, and evaluating employees. She also provided accounting, payroll, and information technology services for both entities. She updated the employee handbook and training materials. She did not keep track of her time working for one entity versus the other, but Sullivan Olson was not charged for her services and paid no part of her salary. We conclude that this factor also favors the Union.

Fourth, Sullivan Olson and Cremation Society had common ownership. Sullivan solely owned Sullivan Olson, and he and his wife jointly owned Cremation Society. Based on the totality of the circumstances, Sullivan Olson and Cremation Society

did not maintain an arm's-length corporate relationship.[2] For
these reasons, we conclude that the district court properly
determined that Sullivan Olson and Cremation Society
constituted a single employer.

## B. Bargaining Unit

Next, Cremation Society contends that the district court
erred in granting summary judgment for the Union because
there are disputed issues of material fact as to the bargaining
unit work. Cremation Society contends that, even if Sullivan
Olson and Cremation Society were found to be a single
employer, the repudiation of the CBA would still be proper
under the one-man unit rule because Klein was the only
permanent employee performing bargaining unit work.
Specifically, Cremation Society argues there is a "great dispute
between the parties as to the definition of bargaining unit work
in the Compliance Agreement."

This argument raises two issues:[3] whether Sullivan Olson
and Cremation Society's combined employees constitute an

---

[2]  In its reply brief, Cremation Society argues that the district court made
improper negative inferences in reviewing the evidence. However, we do
not consider arguments raised for the first time in the reply brief. *Alam v.
Miller Brewing Co.*, 709 F.3d 662, 668 n.3 (7th Cir. 2013); *Washington v. Ind.
High Sch. Ath. Ass'n*, 181 F.3d 840, 846 n.9 (7th Cir. 1999).

[3]  An underlying issue is whether the one-man unit rule is applicable under
these circumstances regardless of whether Sullivan Olson and Cremation
Society are a single employer. We have not universally applied the one-man
unit rule in all instances involving collective bargaining. For instance, we
rejected the one-man unit rule as a defense to ERISA liability. *See Central
States, Se. & Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 671 (7th Cir.
2005) (citing *Martin v. Garman Const. Co.*, 945 F.2d 1000, 1004 (7th Cir. 1991)
("The district court properly refused to permit the one-man rule to impair
the contract's validity under 29 U.S.C. § 1145.")). The parties have not
provided us with prior instances of the one-man unit rule applying under
remotely similar circumstances. Because neither party addresses this, we
will assume without deciding it is applicable here.

appropriate bargaining unit; and, if so, whether, at the time of
Sullivan Olson's repudiation of the agreement, more than one
employee performed bargaining unit work. Cremation Society
addresses only the second issue. The Union argues that,
because Cremation Society does not contend that the combined
employees would constitute an inappropriate unit for collec-
tive bargaining, they have waived the argument. We agree
with the Union that any challenge to the appropriateness of the
bargaining unit has been waived. *See Arlin-Golf, LLC v. Vill. of
Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011).

The remaining issue, which is the limited focus of Crema-
tion Society's argument on appeal, is whether this unit of
combined employees contained more than one employee
performing bargaining unit work. As noted above, the CBA
provides that "bargaining unit work" explicitly includes
removals, transportation of remains, embalming, funeral
directing, and all other work historically done by the bargain-
ing unit. The Klein affidavit identified three funeral directors,
Mary Sullivan (who is Klein's wife), Eric Klemundt, and
Katherine Howes, who were Cremation Society employees
working exclusively at OBS and regularly performing work,
such as transportation of remains, embalming, preparing
bodies for cremation, and conducting funeral services. As the
district court found, Klein based his affidavit on personal
knowledge; he was employed by Sullivan Olson for sixteen
years, including a brief period of employment by Cremation
Society. We reject Cremation Society's assertion that Klein's
statements are "bare" and "unsupported." Cremation Society
fails to present any evidence to rebut Klein's affidavit. More-
over, Grantham's deposition testimony also corroborates
Klein's affidavit and supports the conclusion that Cremation
Society's funeral directors performed covered work at the time
of Sullivan Olson's repudiation. The undisputed evidence
shows that, as a single employer, Cremation Society and
Sullivan Olson had more than one employee engaged in
bargaining unit work. Therefore, Sullivan Olson's unilateral

repudiation was not lawful under the one-man unit rule. Accordingly, the district court properly granted summary judgment in the Union's favor.

### III.  CONCLUSION

The district court's judgment is AFFIRMED.