RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BAKER CONCRETE CONSTRUCTION, INC.,

　　　　　　　　　　*Plaintiff-Appellee*,

　　*v.*

REINFORCED CONCRETE CONTRACTORS
ASSOCIATION,

　　　　　　　　　　*Defendant*,

REINFORCED CONCRETE IRON WORKERS' LOCAL
UNION 372 OF THE INTERNATIONAL ASSOCIATION OF
BRIDGE STRUCTURAL, ORNAMENTAL, AND
REINFORCING IRON WORKERS,

　　　　　　　　　　*Defendant-Appellant*.

No. 14-4102

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:13-cv-00225—Stephanie K. Bowman, Magistrate Judge.

Argued: June 10, 2015

Decided and Filed: April 21, 2016

Before: BOGGS and BATCHELDER, Circuit Judges; HUCK, District Judge.[*]

───────────────

## COUNSEL

**ARGUED:** David O'Brien Suetholz, KIRCHER, SUETHOLZ & GRAYSON, PSC, Louisville, Kentucky, for Appellant. Michael J. Underwood, PORTER WRIGHT MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellee. **ON BRIEF:** David O'Brien Suetholz, Neal B. Hayes, KIRCHER, SUETHOLZ & GRAYSON, PSC, Louisville, Kentucky, for Appellant. Michael J.

───────────

[*]The Honorable Paul C. Huck, Senior United States District Judge for the Southern District of Florida, sitting by designation.

1

Underwood, Kathryn L. Kreps, PORTER WRIGHT MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellee.

————————————

**OPINION**

————————————

ALICE M. BATCHELDER, Circuit Judge.   This is a case of first impression for this circuit.  We are asked to determine whether an employer has the right under the National Labor Relations Act ("NLRA") to repudiate both his statutory and contractual obligations under a § 8(f) collective bargaining agreement when the employer does not employ anyone within the relevant bargaining unit.  We adopt the single-employee-unit rule, hold that an employer may repudiate his statutory and contractual obligations under such circumstances, and affirm the judgment of the district court.

**I.**

Baker Concrete Construction, Inc. ("Baker") is a company based in Monroe, Ohio.  Its primary field of work involves the concrete construction industry.  As with many large companies in the construction industry, Baker subcontracts its work to various smaller firms and individuals.  In 2000, Baker became a signatory to a multi-employer collective bargaining agreement ("CBA") between the Reinforced Concrete Contractors Association ("RCCA") and Reinforced Concrete Iron Workers' Local Union 372 ("Union").  The CBA was intended to cover current employees as well as employees that Baker had not yet hired.  It was later revised and renewed, with the current version taking effect on January 1, 2012, and expiring May 31, 2015.

This prehire CBA is a special type of bargaining contract that is allowed only in the construction industry.  *See* 29 U.S.C. § 158(f).  Essentially, the CBA established the basic work-place conditions, wage rates, and employee protections that can be found in any other collective bargaining agreement, and then was renewed automatically from year to year, even after the initial term of the contract had expired.

On January 25, 2013, Baker sent a letter to the Union stating: "This letter is to notify you that Baker has no ongoing contractual obligations under the Agreement. To the extent that any formal notice of termination is necessary, this letter is Baker's notice of its intent to terminate the Agreement, including any subsequent successor agreements." Baker asked the Union to respond if it believed that this termination was ineffective or deficient in any way. On January 30, 2013, the Union responded with a letter to Baker stating:

> As per Article 40, in the Agreement between Local 372 and the Reinforced Concrete Contractors Association, notice of withdrawal should be made not more than 60 days prior to the termination of the Agreement. The Agreement is in effect from January 1, 2013 until May 31, 2015, therefore your request was put forth in an untimely manner.

On February 12, 2013, Baker responded to the Union with a letter stating:

> [R]egardless of Article 40's language, Baker reiterates that none of its employees currently perform work covered by the Agreement. Further, no Baker employees have performed bargaining unit work covered by the Agreement for at least 7 years or longer. Accordingly, Baker has no contractual obligations to Local 372, and Baker is not bound to any provisions in the recently renegotiated contract or any other Local 372 contract.

The Union responded by filing a grievance against Baker for arbitration. Baker reiterated its belief that, since it had not employed any workers under the CBA, it was free to repudiate the contract, as it had stated in its January 25th letter. Baker also stated that it did not recognize the arbitrator's authority to decide this dispute, but that it would agree to appear at the hearing solely for the purpose of preserving its position. On March 26, 2013, RCCA notified Baker that the arbitrator found Baker in violation of Article 23 of the CBA and that Baker had five working days to become compliant. Baker responded by filing suit for declaratory judgment.

It is undisputed that Baker had not hired any employees under the CBA for several years prior to its repudiation of the CBA on January 25, 2013. Although the Union disputed this fact at earlier stages of this litigation, the district court rejected the Union's arguments, and the Union failed to raise the issue on appeal. Thus, the Union has waived the issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

Baker and the Union proceeded through discovery and filed cross-motions for summary judgment.[1]   The district court eventually granted Baker's motion, denied the Union's motion, and vacated the arbitration award.  It also granted declaratory judgment for Baker, declaring that "Baker Concrete has no duty to bargain with Local 372 and no ongoing contractual obligations under any Local 372 CBA."

**II.**

The questions of (1) whether Baker had the right to repudiate the CBA and (2) whether its repudiation was effective with respect to both its statutory and contractual obligations are questions of law, and the district court correctly adjudicated these questions on the merits without deferring to the judgment of the arbitrator.  The courts' role in this case is distinct from the role performed by the arbitrator.  We are not to determine what the rights of the parties might be under the CBA, but rather whether the dispute is actually governed by the CBA.  *Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 904 (6th Cir. 2010) (citing *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 599, 561 (6th Cir. 2008)); *see also Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local Union No. 44, et. al. v. J & N Steel & Erection Co.*, 8 F. App'x 381, 385 (6th Cir. 2001).[2]  This is a legal question that we review de novo.  *Kroger Co.*, 617 F.3d at 904.

---

[1]RCCA filed a motion to dismiss before the case proceeded to discovery, and the district court granted that motion.  *See Baker Concrete Constr., Inc. v. Reinforced Concrete Iron Workers Local Union 372 of the Int'l Ass'n of Bridge Structural, Ornamental, and Reinforcing Iron Workers, et al.*, No. 1:13-cv-225, 2013 WL 5524641 (S.D. Ohio Oct. 4, 2013).  Thus, RCCA was not a party to the summary judgment decision of the district court that is on appeal before us here.

[2]In past cases, we have held that if the question of the termination or expiration of a CBA is a question of contract interpretation, then it should be submitted to the arbitrator, not the court.  *See J & N Steel and Erection Co.*, 8 F. App'x at 385–86.  But this case does not present an issue of contract interpretation.  Rather, the question presented here—regardless of the termination clauses and expiration dates of the CBA—is whether Baker had a right under the NLRA to repudiate the CBA.  This case has to do with the interpretation and application of the NLRA, not with the interpretation and application of the CBA.  Thus, this is a question properly before the courts, not the arbitrator.

## III.

This case hinges on the applicability and scope of the one-employee-unit rule.  This is a narrow rule that has been articulated and applied by the NLRB in cases involving CBAs under NLRA § 8(f) [3]:

> It is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) of the Act, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain.

*Stack Elec.*, 290 NLRB 575, 577 (1988).

Only two of our sister circuits have had the opportunity to address this rule in circumstances analogous to those before us here: *Laborers Health & Welfare Trust Fund v. Westlake Dev.*, 53 F.3d 979 (9th Cir. 1995), and *J.W. Peters, Inc. v. Bridge, Structural, & Reinforcing Iron Workers, Local Union 1*, 398 F.3d 967 (7th Cir. 2005).

In *Westlake*, the Ninth Circuit was presented with a case nearly identical to the one before us here.  Westlake, an employer in the construction industry, entered into a CBA with a local union and then, over the next several years, did not hire anyone who would be covered by the agreement.  *Westlake Dev.*, 53 F.3d at 981.  Accordingly, Westlake notified the union that "it considered the CBA unenforceable and would no longer abide by the agreement." *Id.*  The union filed a grievance against Westlake and began arbitration.  *Id.*  The arbitrator entered an award for the Union, and Westlake filed a petition to vacate the award.  *Id.*  Upon review, the Ninth Circuit reiterated its holding from *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557 (9th Cir. 1984):  "A construction industry employer who employs a single employee pursuant to a Section 8(f) pre-hire agreement is entitled to repudiate the agreement by conduct sufficient to put the union and the employee on notice that the agreement has been terminated." *Westlake Dev.*, 53 F.3d at 982 (quoting *Beck*, 746 F.2d at 566).  Because Westlake was a "one-employee employer during the relevant time period," and because it had given due

---

[3] For the sake of clarity, we note that the NLRA is codified in 29 U.S.C. §§ 151–169.  But the most common convention is to refer to the section numbers and divisions found in the NLRA, not those found in Title 29.

notice to the union of its repudiation of the CBA, the Ninth Circuit concluded that the pre-hire agreement was no longer binding on Westlake in any way. *Id.*

In *Peters*, the Seventh Circuit addressed a similar situation. Again, the employer, Peters, worked in the construction industry and entered into a prehire agreement with the local union for hiring ironworkers. *Peters*, 398 F.3d at 969–70. Peters sent notification to the Union, terminating the agreement inasmuch as it had not employed any covered employees for quite some time and had no intention of hiring any such employees in the future. *Id.* at 970. After surveying several NLRB cases in which the one-employee-unit rule was applied, the *Peters* court held that "the Board's decisions explicitly allow an employer, more generally, to repudiate a pre-hire agreement and discontinue its duties under the agreement where it employs no more than one employee in the relevant unit." *Id.* at 974. This included both the statutory duty to bargain and any contractual duties entailed by the CBA. *Id.* at 974–75. The Seventh Circuit concluded that,

> [A]s a matter of common sense, it seems illogical to continue to bind Peters to a pre-hire agreement simply because it has no employees who could reject the Union as their bargaining representative in a Board-conducted election. We therefore conclude that if Peters in fact employed fewer than two employees during the relevant period, the company's unilateral repudiation of the contract would, as a matter of law, relieve it of its contractual obligation to arbitrate before the JAB.

*Id.* at 975.

The same rationale is immediately applicable to the present case. Here, Baker found itself in exactly the same circumstances that confronted Westlake and Peters, namely, as a party to a § 8(f) agreement that was inapplicable to any of its employees and had been for some time. And like Westlake and Peters, Baker sent a very clear notice of termination to the Union. Hence, as our sister circuits held in *Westlake* and *Peters*, we hold that Baker had the right to repudiate the CBA, and with such repudiation, all of Baker's statutory and contractual obligations under the CBA were terminated.

The logic of the one-employee-unit rule fits perfectly with (1) the nature of collective bargaining, (2) the nature of § 8(f) agreements, and (3) the Supreme Court's rationale in *Jim*

*McNeff, Inc. v. Todd*, 461 U.S. 260, 266 (1983).  First, with reference to the nature of collective bargaining, the NLRB has long held that the very concept of *collective* bargaining "presupposes that there is more than one eligible person who desires to bargain." *Foreign Car Center, Inc.*, 129 NLRB 319, 320 (1960).  If there are no employees within the relevant unit for a collective bargaining agreement, then the agreement is nugatory.  Intuitively, a collective bargaining agreement should be voidable where there is no one with whom and nothing about which to bargain.

Second, with reference to the nature of § 8(f) agreements, that section of the NLRA was enacted to address a very narrow and specific problem.  Unlike typical collective bargaining agreements formed under § 9(a), a "pre-hire agreement is a contract agreed to by an employer and a union *before* the workers to be covered by the contract have been hired." *Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770, 773 (3rd Cir. 1988) (citing Roberts' Dictionary of Industrial Relations, 562 (3rd ed. 1986)).  Ordinarily, such agreements are illegal because they purport to tie employees to a majority representative—i.e., labor union—without the majority of the employees' selecting and ratifying which organization they wish to represent their interests.  But because general contractors and other employers in the construction industry do not hire and keep employees and subcontractors on the same permanent basis as other employers do, it is necessary for these employers to have more flexibility in their bargaining contracts and union relations.  Without the ability to enter into prehire agreements, contractors would be unable to submit informed and accurate bids for construction projects because they would not have any certainty regarding their employee expenses and personnel overhead. *Id.* at 772–73; *see also McNeff*, 461 U.S. at 266.  To accommodate these unique needs, Congress added § 8(f) to make prehire agreements legal within the construction industry.  But § 8(f) agreements, by their very nature, are tentative and anticipatory.  In fact, the Supreme Court stated that, "[a]bsent majority credentials, the collective-bargaining relationship and the union's entitlement to act as the exclusive bargaining agent never mature[s]." *McNeff*, 461 U.S. at 267.  Section 8(f) agreements are intended to cover foreseeable groups of employees for short-term or interim construction projects where they would otherwise be unrepresented.  When there have been no employees to represent for at least ten years, and will be no employees to represent in the foreseeable future—as it is undisputedly the case with Baker here—it is difficult to

conceive of a reason to deny a contractor the right to terminate an agreement that was intended to be tentative, anticipatory, and conditional in the first place.

Third, with reference to the Supreme Court's rationale in *McNeff*, the one-employee-unit rule is in line with the Court's holding regarding the repudiation of § 8(f) agreements. In *McNeff*, the Court commented on its prior decision in *NLRB v. Local 103, International Association of Bridge Workers (Higdon)*, 434 U.S. 335 (1978), and reaffirmed that "a prehire agreement is voidable until and unless [the union] attains majority support in the relevant unit." *McNeff*, 461 U.S. at 269 (quoting *Higdon*, 434 U.S. at 341) (alteration in the original) (internal quotation marks omitted). The Court went on to describe § 8(f) agreements as "voluntary and voidable." *Id.* The employer bound by these agreements was said to have an "undoubted right to repudiate a prehire agreement before the union attains majority support in the relevant unit." *Id.* at 270. Obviously, if an employer has one or no employees in the relevant unit, then it is impossible for the union to attain majority support. There is no majority. The one-employee-unit rule simply makes explicit what *McNeff*'s rationale implied regarding § 8(f) agreements.

The Union argues that even if an employer's *statutory* duty to bargain under a § 8(f) agreement is susceptible to repudiation, the employer's *contractual* duty under such an agreement is not. While the Union is correct in seeing a distinction between these duties—a distinction evidenced by the existence of a § 8(a)(5) action for statutory violations and a § 301 action for contractual violations—its argument is directly contradicted by *McNeff*:

> Neither does respondents' § 301 action trench on the voluntary and voidable characteristics of a § 8(f) prehire agreement. . . . Moreover, although *the voidable nature of prehire agreements clearly gave petitioner the right to repudiate the contract*, it is equally clear that petitioner never manifested an intention to void or repudiate the contract.
>
> . . .
>
> [T]he monetary obligations assumed by an employer under a prehire contract may be recovered in a § 301 action brought by a union prior to the repudiation of the contract, even though the union has not attained majority support in the relevant unit. There having been no repudiation in this case, the judgment of the Court of Appeals is *Affirmed*.

*Id.* at 269–70, 271–72 (emphasis added).  The dispositive fact in *McNeff* was that the employer never manifested any intent to repudiate the agreement.  *Id.* at 270.  But the Court unequivocally affirmed that if he had manifested such an intention, it would have effectively terminated all of his contractual duties under the agreement.  Here, Baker provided a specific and unmistakable manifestation of intent to repudiate the CBA, and in keeping with *McNeff*, we hold that this repudiation was effective to end all of Baker's contractual duties under the CBA.

## IV.

We conclude that the one-employee-unit rule is properly applicable in this case and that Baker properly repudiated the CBA.  We AFFIRM the disposition of the district court.