*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLEN PARK RETIREES ASSOCIATION, INC.
and JANICE K. PILLAR, Personal Representative of
the ESTATE OF RUSSELL PILLAR,

       Plaintiffs-Appellees,

v

CITY OF ALLEN PARK,

       Defendant-Appellant,

and

JOYCE A. PARKER,

       Defendant.

FOR PUBLICATION
May 18, 2023

No. 357955
Wayne Circuit Court
LC No. 14-003826-CZ

DALE COVERT, and all others similarly situated,

       Plaintiff-Appellee,

v

CITY OF ALLEN PARK,

       Defendant-Appellant.

No. 357956
Wayne Circuit Court
LC No. 18-004458-CK

Before: RICK, P.J., and O'BRIEN and PATEL, JJ.

O'BRIEN, J. (*dissenting*).

In *Kendzierski v Macomb Co*, 503 Mich 296, 305; 931 NW2d 604 (2019), our Supreme Court emphasized the "basic principle[] of contract interpretation" that, "absent a contrary intent . . . contractual obligations will cease, in the ordinary course, upon termination of the

-1-

bargaining agreement." (Quotation marks and citation omitted). The majority holds that the collective-bargaining agreements (CBAs) in this case provide the requisite "contrary intent" to extend defendant's contractual obligations to provide healthcare benefits to retirees beyond the durational clauses of the CBAs. The majority divines this intent from language in the CBAs stating that retirees' healthcare benefits will be covered by a certain plan until they reach age 65 or are otherwise eligible for Medicare, at which time the retirees will be covered by a supplemental plan. In my opinion, the majority's holding is in direct contravention of *Kendzierski* and the cases on which it relied. Consistent with *Kendzierski*, I would hold that because the CBAs do not specify an alternative ending date for healthcare benefits, the healthcare benefits provided under the CBAs expired when the parties' contractual obligations expired. Accordingly, I respectfully dissent.

As relevant to the CBA in Docket No. 357955 (the *Pillar* case), the majority relies on the following provision:

> Retired employees who were hired after 12/1/91 shall be covered by an HMO plan with the same coverage as the Blue Cross/Blue Shield plan, cost sustained by the City, until the retired employee reaches age 65 or is eligible for Medi-Care [sic], when the City will supplement with a "65 Plan." Should an employee, either active or retired, become deceased, said employee's spouse and eligible dependents under the plan shall continue to be covered, provided said spouse remains unmarried.

For the CBAs in Docket No. 357956 (the *Covert* case), the majority points to a provision that provides:

> **Retiree Health Insurance** Retired Employees, and surviving, and non-married spouses, and eligible dependents, shall continue to be covered by this plan, with the full cost sustained by the City, until the retired Employees and surviving non-married spouses reach age 65 or are eligible for [M]edicare. Upon reaching eligibility for Medicare, the Retiree and/or the surviving non-married spouse shall apply for Medicare benefits. Upon application and approval of Medicare benefits, the retiree and/or surviving non-married spouse shall have the above listed Blue Cross/Blue Shield benefits (Section 22.2) reduced to cover that portion not covered by Medicare. This also covers individuals on HMO programs.

According to the majority, these provisions "expressly grant retirees vested medical benefits beyond the duration of the CBAs." I disagree.

*Kendzierski* approvingly discussed *Gallo v Moen Inc*, 813 F3d 265 (CA 6, 2016), in which the Sixth Circuit provided a thoughtful analysis about why the CBAs in that case did not provide lifetime and unalterable healthcare benefits to retirees:

> *First and foremost*, nothing in this or any of the other CBAs says that Moen committed to provide unalterable healthcare benefits to retirees and their spouses for life. That is what matters, and that is where the plaintiffs fall short. [*M & G Polymers USA, LLC v Tackett*, 574 US 427; 135 S Ct 926; 190 L Ed 2d 809 (2015) (*Tackett*)] directs us to apply ordinary contract principles and not to tilt the inquiry

-2-

in favor of vesting—a frame of reference that prompts two questions. What is the contract right that the plaintiffs seek to vindicate? And does the contract contain that right? The plaintiffs claim a right to healthcare benefits for life. But the contracts never make that commitment. Yes, Moen offered retirees healthcare benefits. And yes Moen, like many employers, may have wished that business conditions and stable healthcare costs (hope springs eternal) would permit it to provide similar healthcare benefits to retirees throughout retirement. But the question is whether the two parties signed a contract to that effect. Nothing of the sort appears in the collective bargaining agreements.

     *Second*, not only do the CBAs fail to say that Moen committed to provide unalterable healthcare benefits for life to retirees, everything they say about the topic was contained in a three-year agreement. If we do not expect to find "elephants in mouseholes" in construing statutes, we should not expect to find lifetime commitments in time-limited agreements. Each of the CBAs made commitments for approximately three-year terms—well short of commitments for life. Present in each CBA, the general durational clause supplied a concrete date of expiration after which either party could terminate the agreement. When a specific provision of the CBA does not include an end date, we refer to the general durational clause to determine that provision's termination. Absent a longer time limit in the context of a specific provision, the general durational clause supplies a final phrase to every term in the CBA: "until this agreement ends." Reading the healthcare provisions in conjunction with the general durational clause gives meaning to the phrases "[c]ontinued," "will be provided," "will be covered," and the like. These terms guarantee benefits until the agreement expires, nothing more. [*Kendzierski*, 503 Mich at 314-315, quoting *Gallo*, 813 F3d at 269 (quotation marks omitted).]

After quoting this portion of *Gallo*, the *Kendzierski* Court concluded:

     The *Gallo* analysis applies equally to the instant case. It is undisputed that none of the CBAs at issue specifies that defendant committed itself to provide lifetime and unalterable healthcare benefits. It is also undisputed that the CBAs contain three-year durational provisions. Therefore, the CBAs guarantee benefits only until the agreements expire and no longer. In other words, because the CBAs do not specify an alternative ending date for healthcare benefits, their general durational clauses control. [*Kendzierski*, 503 Mich at 315.]

Like in *Kendzierski*, the first point in *Gallo*'s analysis is plainly applicable here. Nothing in either provision relied on by the majority states that defendant committed itself to provide healthcare benefits beyond the CBAs' general durational clause. At most, such an intent may be inferred from the fact that the CBAs address events that could occur beyond the durational terms of the agreements. However, *Kendzierski* tell us that this is not enough to conclude that the parties intended for coverage to last beyond the term of the CBAs. See *id*. at 322-324 ("Each of the events addressed in these provisions could occur during the three-year duration of the CBAs. That each of these events could occur beyond this period does not indicate that the parties intended coverage to last beyond the term of the CBAs."); *id*. at 324 n 17 ("But we do require something more than

a provision that ties benefits to an event that could *conceivably* occur after the expiration of the CBA in order to counter a general durational clause . . . ."). See also *Tackett*, 574 US at 442 ("But when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life.").

The second point in *Gallo*'s analysis also applies here—neither provision on which the majority relies contains an end date, nor does anything in either provision suggest that they were intended as an exception to the general durational clauses of their respective CBAs. The majority disagrees and holds that language in the CBAs stating that certain healthcare coverage will last until a retiree reaches age 65 provides an alternative end date for those provisions of the CBAs. While the CBAs at issue in *Kendzierski* did not use language similar to that relied on by the majority, *Kendzierski* approvingly discussed *Serafino v City of Hamtramck*, 707 Fed Appx 345 (CA 6, 2017), and one of the CBAs at issue in *Serafino* did.[1] Specifically, one of the agreements in *Serafino* provided:

> The City shall pay in full for the cost of medical, hospital, and surgical insurance (as more fully described in Section 7(a) [the provision for active employee healthcare insurance]) for employees and eligible members of employees' families who retire on or after July 1, 1986 until that retired employee attains the age of sixty-five (65) or is eligible for [M]edicare or [M]edicaid. [*Id*. at 347 (alterations in original).]

In rejecting the notion that this provision demonstrated the parties' intent to vest healthcare benefits beyond the CBA's general durational clause, the Sixth Circuit, relying on *Gallo*, explained:

> Plaintiffs argue that phrases such as "until that retired employee attains the age of sixty-five," "shall be eligible for," and "continuous" indicate an intent to vest benefits for life. And notably, plaintiffs claim the healthcare provision "does not read 'until they reach age 65 or are eligible for Medicare or Medicaid OR UNTIL THE EXPIRATION OF THIS AGREEMENT WHICHEVER IS SOONER.'" But that is exactly how it reads because, unless there is "a longer time limit in the context of a specific provision, the general durational clause supplies a final phrase

---

[1] The majority emphasizes that *Serafino* is an unpublished decision. While I believe that this is irrelevant given *Kendzierski*'s discussion of *Serafino*, I nevertheless note that the Sixth Circuit reaffirmed *Serafino* in *Cooper v Honeywell Int'l, Inc*, 884 F3d 612, 218-619 (CA 6, 2018). There, the Sixth Circuit explained that *CNH Indus NV v Reese*, 200 L Ed 2d 1; 138 S Ct 761 (2018), which was released after *Serafino* was decided, "confirm[ed]" that *Serafino*'s "reasoning was correct." *Cooper*, 884 F3d at 619. In fact, relying on *Serafino*, *Cooper* rejected an argument identical to the majority's reasoning here—*Cooper* held that a CBA which promises to provide healthcare benefits "until age 65" did not provide "the sort of specific and ascertainable end date" necessary "to supersede the general durational clause." *Id*. at 619-620. I see no reason to discuss *Cooper* at length, however, given that *Kendzierski* scarcely referenced *Cooper* aside from noting that it "reaffirmed" *Serafino*. See *Kendzierski*, 503 Mich at 321 n 15.

to every term in the CBA: 'until this agreement ends.' " [*Id.* at 354, quoting *Gallo*, 813 F3d 269.]

*Kendzierski* approvingly quoted this portion of *Serafino*, particularly its reasoning that a CBA which provides that the employer will pay retirees' medical expenses "until that retired employee attains the age of sixty-five (65)" does not indicate "any intention that the retiree benefits vest," but "serve[s] only to ' "guarantee[] benefits until the agreement expires, nothing more." ' " *Kendzierski*, 503 Mich at 320-321, quoting *Serafino*, 707 Fed Appx at 352, quoting *Gallo*, 813 F3d at 269.

*Serafino*'s analysis, as quoted by *Kendzierski*, should apply to this case. Doing so, I would conclude that the provisions of the CBAs on which the majority relies did not vest benefits for retirees beyond the duration of the CBAs. Rather, those provisions served only to guarantee the benefits until the agreements expired, nothing more. See *Kendzierski*, 503 Mich at 320-321; *Serafino*, 707 Fed Appx at 352. See also *Kendzierski*, 503 Mich at 315, quoting *Gallo*, 813 F3d at 269 (" 'Reading the healthcare provisions in conjunction with the general durational clause gives meaning to the phrases "[c]ontinued," "will be provided," "will be covered," and the like. These terms guarantee benefits until the agreement expires, nothing more.' ").[2]

The majority attempts to undermine *Serafino* by claiming that it fails to apply the "normal rules of contract interpretation," but their attempt fails. *Serafino* was a straightforward application

---

[2] The plaintiffs in the *Covert* case argue that the 2003-2008 Allen Park Command Officers Associations of Michigan CBA (which is only one of the CBAs at issue and covers an extremely limited number of class members) never expired because its durational term stated that it would continue unless either the City or the bargaining unit gave timely notice to terminate the contract, and no such notice was given. The undisputed evidence shows that Dale Covert was the last member of that bargaining unit when he retired in 2008, such that the bargaining unit no longer existed after that time. To address this type of situation, I would adopt the "one-employee-unit rule." The one-employee-unit rule states "that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) [which includes refusal 'to bargain collectively with the representatives' of its employees as an unfair labor practice by an employer] of the [National Labor Relations] Act [NLRA], may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain." *Stack Elec*, 290 NLRB 73 (1988). The United States Sixth Circuit Court of Appeals adopted "the single-employee-unit rule" in *Baker Concrete Constr, Inc v Reinforced Concrete Contractors Ass'n*, 820 F3d 827 (CA 6, 2016). The court concluded "that an employer may repudiate his statutory and contractual obligations under such circumstances." *Id.* This Court regards federal precedent interpreting the NLRA as helpful in analyzing identical provisions of Michigan's public employment relations act (PERA), MCL 423.201 *et seq. West Ottawa Educ Ass'n v West Ottawa Pub Schs Bd of Educ*, 126 Mich App 306, 314-315; 337 NW2d 533 (1983). The PERA includes refusal "to bargain collectively with the representatives of its public employees" as an unfair labor practice by a public employer. MCL 423.210(1)(e). This provision is virtually identical to the analogous NLRA provision. Therefore, it is reasonable to apply the one-employee-unit rule in this case.

of *Gallo*, and the relevant reasoning in both cases relied on "the cardinal principle" of contract interpretation "which requires us to construe . . . contract[s] as a whole and give harmonious effect, if possible, to each word and phrase." *Singer v Goff*, 334 Mich 163, 168; 54 NW2d 290 (1952). They each explained how this rule functions when a durational term applies to an entire agreement—the durational term supplies an end date for every provision (unless the provision clearly states otherwise), and each provision should be read in conjunction with this end date to give effect to the whole agreement. This is entirely consistent with *Kendzierski*, so it is no surprise that *Kendzierski* favorably discussed both cases.

For these reasons, I would conclude that, like in *Kendzierski*, "because the CBAs do not specify an alternative ending date for healthcare benefits, their general durational clauses control." *Kendzierski*, 503 Mich at 315. That is, I would hold that "[b]ecause the CBAs at issue here do not indicate that the provided benefits are to continue after the agreement's expiration . . . the contractual obligations provided therein expired when the CBAs expired." *Id*. at 326. Accordingly, I respectfully dissent.

/s/ Colleen A. O'Brien