**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1298
_____

BRIAN TREMATORE PLUMBING & HEATING, INC.,
Appellant

v.

SHEET METAL WORKERS LOCAL UNION 25, SMART,
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:21-cv-05285)
District Judge: Honorable Brian R. Martinotti
_____

Argued on June 4, 2025

Before: HARDIMAN, BIBAS, and FISHER, *Circuit Judges*.

(Filed: August 1, 2025)

Dennis J. Alessi [Argued]
Mandelbaum Barrett
3 Becker Farm Road

Suite 105
Roseland, NJ 07068

*Counsel for Appellant*

Raymond Baldino
Zazzali Fagella Nowak Kleinbaum & Friedman
570 Broad Street
Suite 1402
Newark, NJ 07102

Bennet D. Zurofsky [Argued]
24 Bowdoin Street
Maplewood, NJ 07040

*Counsel for Appellee*

———————

OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

In this labor law appeal, Brian Trematore Plumbing & Heating, Inc. argues that it repudiated a collective bargaining agreement (CBA) after it stopped employing bargaining-unit employees. We hold that Trematore's attempted repudiation was ineffective, so the CBA remains in effect. We will therefore affirm the District Court's judgment.

# I

## A

We begin by summarizing the National Labor Relations Act (NLRA), which "encourag[es] the practice and procedure of collective bargaining" to resolve "industrial disputes arising out of differences as to wages, hours, or other working conditions." 29 U.S.C. § 151. The NLRA guarantees employees "the right to self-organization, to form, join, or assist labor organizations" and "to bargain collectively through representatives of their own choosing." *Id.* § 157.

This case concerns CBAs governed by two sections of the NLRA: § 9(a) and § 8(f). Section 9(a) agreements arise after a union "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit" becomes "the exclusive representative[] of all the employees in" that unit. 29 U.S.C. § 159(a); *see also Sheet Metal Workers' Int'l Ass'n Loc. 19 v. Herre Bros.*, 201 F.3d 231, 240–41 (3d Cir. 1999) (discussing the formation of a CBA under § 9(a)). It is an unfair labor practice for an employer "to refuse to bargain collectively with" that union. 29 U.S.C. § 158(a)(5). "[N]either an employer nor a union governed by § 9(a) may unilaterally withdraw from" a "collective bargaining agreement; instead, withdrawal is subject to specific requirements." *Herre Bros.*, 201 F.3d at 239. Even "[u]pon the expiration of a collective bargaining agreement, the employer may not withdraw recognition of the union unilaterally unless it has reasonable, good faith grounds for believing that the union has lost its majority status." *Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Loc. 3 v. NLRB*, 843 F.2d 770, 772 (3d Cir. 1988).

CBAs under § 8(f) operate differently. Often known as "pre-hire agreements," they entail an "employer engaged primarily in the building and construction industry" making "an agreement covering employees" who are—or "will be engaged"—"in the building and construction industry with a labor organization of which building and construction employees are members." 29 U.S.C. § 158(f). "Because the union enjoys no presumption of majority status" under a pre-hire agreement, "either party in a § 8(f) relationship is free to unilaterally withdraw and avoid any obligation to bargain for a successor contract upon the expiration of the collective bargaining agreement." *Herre Bros.*, 201 F.3d at 239 (citation modified). But once "the union has attained majority status, the § 8(f) prehire agreement is converted into a § 9(a) collective bargaining agreement." *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 383 n.5 (3d Cir. 1994).

On top of the particular attributes of CBAs formed under § 8(f) and § 9(a), this appeal involves a principle known as the "one-employee unit rule." Though not explicitly codified by statute or regulation, the NLRB has long recognized the one-employee unit rule because the "principles of collective bargaining presuppose that there is more than one eligible person who desires to bargain." *Stack Elec.*, 290 NLRB 575, 577 (1988). So "an employer [who] employs one or fewer unit employees on a permanent basis" can, "without violating Section 8(a)(5) of the Act," "withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain." *Id.*; *see also Foreign Car Ctr., Inc.*, 129 NLRB 319, 320 (1960). Several of our sister courts have held that the one-employee

4

unit rule permits an employer to repudiate its statutory and contractual obligations arising from CBAs under § 8(f). *See, e.g.*, *Laborers Health & Welfare Tr. Fund v. Westlake Dev.*, 53 F.3d 979, 982–83 (9th Cir. 1995); *J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Loc. Union 1*, 398 F.3d 967, 973–77 (7th Cir. 2005); *Baker Concrete Constr., Inc. v. Reinforced Concrete Contractors Ass'n*, 820 F.3d 827, 830–33 (6th Cir. 2016). But no federal appellate court has held that the one-employee unit rule permits repudiation of a CBA under § 9(a).

B

Trematore does plumbing work and heat, ventilation, and air conditioning (HVAC) construction. In 2017, Trematore was awarded a contract for plumbing and HVAC construction at High-Tech High School in Secaucus, New Jersey. Before starting the project, Trematore was required to execute a project labor agreement recognizing Local 25 "as the sole and exclusive bargaining representative[] of all craft employees who" performed on-site sheet metal work. App. 147. This pre-hire agreement—formed under § 8(f) of the NLRA—required all construction to be performed by unionized workers, and it prohibited Trematore from subcontracting sheet metal work to non-Local 25 workers. When executing the June 1, 2015, to May 31, 2018, CBA, Trematore's president wrote on the contract, "This agreement is for the Hudson County High Tech School only!" App. 231.

After Trematore's plumbers—who were represented by the plumbers' union—performed HVAC sheet metal work, Local 25 filed a grievance asserting that the work should have been done by its members. So Trematore began employing Local 25's members to do sheet metal fabrication and

5

installation HVAC work in 2018. But in May 2018, Trematore laid off four Local 25 members who had been working on the project and hired twelve non-union sheet metal workers to work on the project over a weekend. That prompted Local 25 to pursue another grievance and file an unfair labor practice charge with the NLRB. Local 25 also filed a representation petition with the NLRB, presenting signed cards to demonstrate that a majority of Trematore's sheet metal workers supported the union.

To resolve the grievance and unfair labor practice charge, Trematore executed another CBA on May 23, 2018, which covered the period between June 1, 2015, to May 31, 2018. Unlike the prior CBA, this one did not purport to limit it to the High-Tech High School project.

The CBA included automatic renewal by its "evergreen" provision:

> This Agreement . . . shall become effective on the FIRST day of JUNE, 2015 and remain in full force and effect until the THIRTY-FIRST day of MAY, 2018 and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party by written notice, provided, however, that, if this agreement contains Article X, Section 8, it shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the

procedures under Article X, Section 8 have been otherwise completed.

App. 300.

Article X, Section 8 required binding interest arbitration of a successor agreement if direct negotiations between the parties failed. And Trematore "waive[d] any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment of this Agreement." *Id.*

Trematore also agreed that subcontractors would agree in writing to comply with the CBA. And this time, Trematore recognized that Local 25 represented a majority of its employees within the bargaining unit. It also recognized "the union as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future job sites within the jurisdiction of the union" "until such time as the union loses its status as the employees' exclusive representative as a result of an N.L.R.B. election requested by the employees." App. 302 (capitalization altered). Because Local 25 demonstrated its majority status, this CBA was governed by § 9(a) of the NLRA. *See Herre Bros.*, 201 F.3d at 242. Trematore agreed that it would "not request an N.L.R.B. election and expressly waive[d] any right it may have to do so." App. 302 (capitalization altered).

The labor peace effectuated by the May 23, 2018, signing of the CBA was short lived. That agreement expired eight days later and Trematore did not sign the CBA for June 1, 2018, to May 31, 2021, which was negotiated by a multi-employer trade organization of which Trematore was not a member. Nor did Trematore request to independently negotiate

7

or engage in binding interest arbitration with Local 25 for a subsequent CBA. Trematore nonetheless continued to directly employ Local 25's sheet metal workers until September 2018, and it abided by the 2018/2021 CBA during that time. Since September 2018, Trematore has not directly employed Local 25's workers, however.

In May 2019, Local 25 sent Trematore a printed copy of the 2018/2021 CBA. Trematore responded that it would not sign the agreement because it had "made a managerial decision that it will no longer bid for any work at any construction site which is within the work jurisdiction provisions of Local 25's" CBA. App. 433. Local 25 replied that Trematore was bound to the CBA because of the 2015/2018 CBA's evergreen provision.

In March 2020, Trematore was subcontracted to perform plumbing and HVAC work at Felician University Wellness and Recreation Center in New Jersey. That project required sheet metal work and was within Local 25's jurisdiction. But Trematore subcontracted out all the HVAC work—including sheet metal work—to a company that employed non-union sheet metal workers in January 2021.

The next month, Local 25 served Trematore with another grievance alleging that it violated the 2018/2021 CBA by subcontracting sheet metal work during the Felician project without the subcontractor agreeing to the CBA's terms. Trematore countered that it was not bound by the CBA because (1) over two and a half years had passed since it had employed Local 25's members or performed any sheet metal work within Local 25's jurisdiction and (2) the 2015/2018 CBA had expired on May 31, 2018. In response, Local 25 argued that Trematore

was bound to the 2018/2021 CBA because of the 2015/2018 CBA's evergreen provision.

In February 2021, Local 25 sent Trematore a letter requesting negotiations for a 2021/2024 CBA. Trematore told Local 25 that it was not obligated to negotiate because it was not bound by an existing CBA. Local 25 rejoined that Trematore was bound to the 2018/2021 CBA because of the evergreen provision in the 2015/2018 CBA.

C

A few weeks after receiving the request to negotiate, Trematore sued Local 25 in the United States District Court for the District of New Jersey. It sought to enjoin Local 25 from processing any grievances, proceeding to arbitration with respect to Trematore, and demanding negotiations for a successor CBA. Trematore also requested a declaration that Local 25 is no longer the exclusive bargaining representative for Trematore's employees and that Trematore is not subject to the 2015/2018 CBA or any successor agreements. In its answer, Local 25 counterclaimed, requesting a declaration that Trematore is bound by the 2018/2021 and 2021/2024 CBAs, that Trematore improperly repudiated its CBA with Local 25, and that Trematore improperly withdrew its § 9(a) recognition of Local 25. Local 25 also requested a declaration that Trematore must bargain with it and recognize its § 9(a) status.

Soon after Trematore filed this civil action, Local 25 filed an unfair labor practice charge with the NLRB. It alleged that Trematore had violated the NLRA by (1) repudiating Local 25's exclusive representation status and its existing contract, (2) refusing to proceed with arbitration concerning a

9

pending grievance, and (3) refusing to negotiate a successor agreement.

In 2023, the NLRB investigated Local 25's unfair labor practice charge and issued a complaint and notice of hearing against Trematore. In January 2024, an Administrative Law Judge held that Trematore "violated Section 8(a)(5) and (1) of the Act by failing and refusing to bargain in good faith and failing to continue in effect all the terms and conditions of the parties' 2015/2018 collective bargaining agreement by subcontracting bargaining unit work." App. 836.

Back in the District Court, the parties cross-moved for judgment on a stipulated record. Also in January 2024, the District Court denied Trematore's motion for judgment on a stipulated record and granted Local 25's cross-motion. *See Brian Trematore Plumbing & Heating, Inc. v. Sheet Metal Workers Loc. Union 25, Smart*, 2024 WL 209039, *1 (D.N.J. Jan. 19, 2024). The Court first held that it lacked jurisdiction to award Trematore's requested injunctive relief because it was "beyond the Court's jurisdiction under § 301" of the Labor Management Relations Act (LMRA) and within the exclusive jurisdiction of the NLRB. *Id.* at *11. The Court then held that Trematore was bound by the CBA because of the evergreen provision, reasoning that the one-employee unit rule does not apply to CBAs formed under § 9(a). The Court also reasoned that the "CBA contain[ed] provisions which unequivocally waived Trematore's right to repudiate the collective bargaining agreements during their term, or during the term of any extension, modification, or amendment." *Id.* at *14. So Trematore could not repudiate the CBA, and the Felician grievance was therefore arbitrable. Trematore timely appealed.

10

## II

The District Court exercised jurisdiction under § 301(a) of the LMRA, which confers jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). We have jurisdiction under 28 U.S.C. § 1291.

The parties cross-moved for judgment on a stipulated record, so we review the District Court's factual findings for clear error and its legal conclusions de novo. *See Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 5 (1st Cir. 2022).

## III

Because we must ensure that the District Court had jurisdiction over this matter, we begin by discussing the interplay between the NLRA and § 301(a) of the LMRA.

A few additional provisions of the NLRA bear on the District Court's jurisdiction. Section 7 regulates employees' rights to organize and engage in collective bargaining, and § 8 defines unfair labor practices by employers and unions. 29 U.S.C. §§ 157–58. Section 9(b) provides that the NLRB "shall decide . . . the unit appropriate for the purposes of collective bargaining." *Id.* § 159(b). And Section 10 authorizes the NLRB "to prevent any person from engaging in any unfair labor practice . . . affecting commerce." *Id.* § 160(a). The NLRB's jurisdiction is generally exclusive, so when "an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the" NLRB. *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 245

11

(1959).

At the same time, § 301(a) of the LMRA confers jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). This "carve[s] out" an exception to the NLRB's "exclusive jurisdiction." *Vaca v. Sipes*, 386 U.S. 171, 179 (1967). So when "the activity in question also constitutes a breach of a collective-bargaining agreement, the Board's authority is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." *William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville & Vicinity*, 417 U.S. 12, 16 (1974) (citation modified). But in "many circuits, a party's mere assertion that a claim is contractual is not an automatic ticket to federal court; rather, the court must examine the major issues to be decided and determine whether they can be characterized as primarily representational or primarily contractual." *Dist. No. 1, Pac. Coast Dist., Marine Eng'r's Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 815 F.3d 834, 840 (D.C. Cir. 2016) (citation modified).

Because this declaratory judgment action concerns an alleged violation of a CBA, the District Court "retain[ed] independent jurisdiction to decide" it under § 301(a). *Mack Trucks, Inc. v. Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am., UAW*, 856 F.2d 579, 585 (3d Cir. 1988). That jurisdiction enabled the District Court to decide whether the one-employee unit rule permitted Trematore to repudiate the CBA. *See Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 658 (1998) (stating that affirmative defenses as to why a contract is invalid may also be adjudicated). And because "arbitration is a

12

matter of contract," the District Court also had jurisdiction to determine whether the Felician grievance was arbitrable. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).[1]

IV

Having determined that the District Court had jurisdiction, we now consider whether Trematore effected a valid repudiation of the CBA under the one-employee unit rule. It did not. That is because, as the District Court concluded, Trematore was bound by the CBA through its evergreen provision. *See Carpenters Health v. Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 383 (3d Cir. 2016) (stating that courts "generally regard evergreen clauses as creating a perpetual agreement that can only be terminated with notice," so "if neither party terminates the contract, it will be renewed automatically" (citation modified)). Trematore also "waive[d] any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment." App. 300. And contrary to the evergreen provision, Trematore did not send a written notice of reopening to negotiate a successor agreement. So under the evergreen provision, the CBA has continued to automatically renew each

---

[1] Trematore argues that the District Court erred by holding that it lacked jurisdiction to enjoin Local 25 from processing grievances, proceeding to arbitration, and demanding negotiations for a successor agreement on the ground that this relief would interfere with the NLRB's exclusive jurisdiction over primarily representational matters. We need not reach these arguments, however, because the District Court properly exercised jurisdiction while holding that the CBA remains in effect, so Trematore is not entitled to injunctive relief.

13

year. That said, Trematore argues that its correspondence with Local 25 in May 2019 and February 2021 repudiated the CBA under the one-employee unit rule. We disagree.

The parties dispute whether the one-employee unit rule applies to CBAs formed under § 9(a). But we need not decide that novel question because the CBA's non-repudiation and binding interest arbitration clauses "represent the parties' agreement to negotiate a renewal agreement, and, if no agreement is forthcoming, to submit their dispute to the [National Joint Adjustment Board] for interest arbitration," so repudiation is inappropriate. *Am. Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 104*, 794 F.2d 1452, 1455 (9th Cir. 1986). So even if we were to recognize the one-employee unit rule in the context of a CBA under § 9(a), Trematore could not use it to repudiate the CBA here. *See id.* at 1454–55 (rejecting repudiation under the one-employee unit rule when there was an interest arbitration clause).

Trematore has not cited—nor have we found—any case where the one-employee unit rule vitiated a non-repudiation clause or a binding interest arbitration clause.[2] At best, the cases Trematore cites are distinguishable because they held that an employer's repudiation was effective even though it was untimely under the CBA. *See, e.g.*, *Baker*, 820 F.3d at 829, 833; *J.W. Peters*, 398 F.3d at 969–70, 977. So we hold that

---

[2] The records of *J.W. Peters* and *Baker Concrete* show that those CBAs did not have a non-repudiation clause or an interest arbitration clause and that they explicitly permitted repudiation. *See J.W. Peters*, 398 F.3d at 969–70; *J.W. Peters*, Dist. Ct. Dkt. No. 1:04-cv-2932, ECF No. 1-1 (N.D. Ill. 2004); *Baker Concrete*, 820 F.3d at 829; *Baker Concrete*, Dist. Ct. Dkt. No. 1:13-cv-225, ECF No. 1-2 (S.D. Ohio 2013).

14

Trematore's repudiation was ineffective.

Purporting to rely on the CBA's "clear and unambiguous" language, our dissenting colleague reasons that Trematore's February 2021 correspondence terminated the CBA on May 31, 2021. Dissent at 1 (citation modified). That is misguided. Under the evergreen provision, the CBA "shall continue in force from year to year thereafter *unless* written notice of reopening is given not less than ninety (90) days prior to the expiration date." App. 300 (emphasis added). And, as our dissenting colleague concedes, Trematore "undisputedly did not give written notice of reopening, so the CBA remained in force from year to year." *Id.* (citation omitted). Even if Trematore's February 2021 correspondence somehow qualified as a notice of reopening, the CBA further provides that "it shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the [binding interest arbitration] procedures under Article X, Section 8 have been otherwise completed." *Id.* As the Tenth Circuit has explained, these "provisions create a duty on behalf of each party to negotiate and, in the absence of agreement, obligates them to accept the decision of the [National Joint Adjustment Board]." *Sheet Metal Workers' Int'l Ass'n, Loc. Union No. 2 v. McElroy's, Inc.*, 500 F.3d 1093, 1098 (10th Cir. 2007).

As our sister court succinctly stated, the upshot is this: "one party's notice of intent to 'terminate' the agreement on expiration does not affect the parties' contractual obligations thereunder." *Id.* Because Trematore did not serve a notice of reopening, the CBA remains in effect under the "clear and unambiguous" language of the evergreen provision. Dissent at 1 (citation modified).

V

Having held that the CBA remained in effect, we now turn to whether the Felician grievance is arbitrable. To make that determination, we consider (1) whether this dispute "come[s] within the scope of the arbitration clause"; (2) whether "any other provision of the contract expressly exclude[s]" the dispute from arbitration; and (3) whether there is "any other forceful evidence indicating that the parties intended such an exclusion." *United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 331 (3d Cir. 2008) (citation modified). All three requirements are satisfied.

The parties agreed that Trematore would not subcontract bargaining unit work unless the subcontractor agreed in writing to comply with the CBA, and they established an arbitration procedure to resolve "grievances arising out of interpretation or enforcement of" the CBA. App. 296. The CBA does not expressly exclude this dispute from arbitration, and no evidence suggests that the parties intended to exclude it. So we hold that the Felician grievance is arbitrable.

\*　　\*　　\*

For these reasons, we will affirm the District Court's judgment.

16

*Brian Trematore Plumbing & Heating, Inc. v. Sheet Metal Workers Local Union 25, SMART*, No. 24-1298
FISHER, *Circuit Judge*, dissenting in part.

I agree with the majority that we have jurisdiction. However, unlike the majority, I would hold the CBA is no longer in force. Trematore waived the right to repudiate during the CBA's term, not in perpetuity. Trematore gave notice in February 2021 that it was repudiating under the one-employee unit rule, and this repudiation took effect at the end of the term on May 31, 2021. This begs the question of whether Trematore could invoke the one-employee unit rule to repudiate a § 9(a) CBA. Some courts, including the District Court in this case, have held the rule applies only to § 8(f) pre-hire agreements. But I see no reason to limit the rule to one kind of agreement or the other, so I would hold that it applies here and would reverse the District Court judgment to the extent it rules that Trematore continues to be bound by the CBA.

CBAs are interpreted "according to ordinary principles of contract law," *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015), and "as with any other contract, the parties' intentions control," *id.* (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). If the CBA is "clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012)). Here, the CBA's meaning is clear, so it should be interpreted according to its plain language.

The CBA was effective from June 1, 2015 to May 31, 2018. Its evergreen clause provided that it would "continue in force from year to year thereafter unless written notice of reopening [was] given." App. 300. Trematore undisputedly did not give written notice of reopening, so the CBA remained in force "from year to year," *id.*—that is, from June 1, 2018 to

1

May 31, 2019; from June 1, 2019 to May 31, 2020; and so on.[1] In other words, the plain language of the evergreen clause did not provide for an indefinite continuous term. It provided for a series of terms, each of which had a defined beginning and a defined expiration. The non-repudiation clause provided that Trematore "waive[d] any right it may have to repudiate this Agreement *during the term* of this Agreement, or *during the term* of any extension, modification or amendment of this Agreement." *Id.* (emphasis added).

But the non-repudiation clause's plain language did not prohibit repudiation at the end of a term. There was a point, as each term or extension expired, when Trematore could repudiate. In 2021, Trematore took advantage and permissibly repudiated, as I now explain. In February 2021, in anticipation of the May 31, 2021 expiration date, Local 25 sent Trematore a letter asking to open negotiations for a 2021/2024 CBA. Trematore responded that it had not employed Local 25 members or done sheet metal work in two and a half years, so it did not believe itself bound by the 2018/2021 CBA—including the requirement to negotiate a new CBA.

Thus, Trematore provided notice of repudiation at a reasonable time: about ninety days before the CBA's expiration and at the point when Local 25 asked to begin negotiating. I would hold that this repudiation became effective on May 31, 2021—not "during the term" of the CBA extension, which was prohibited, App. 300, but at the end of the term.

My conclusion that Trematore's repudiation was permitted under the CBA necessarily begs the question of

_____

[1] Throughout this litigation, the parties have assumed that the CBA extended in three-year increments. But that is not what the evergreen clause says.

2

whether repudiation was permitted under the law. The District Court held that the one-employee unit rule permits repudiation only of § 8(f) construction-industry pre-hire agreements, not § 9(a) agreements like the one here. App. 28–29. I disagree.

"[T]he principle of collective bargaining" embodied in the NLRA "presupposes that there is more than one eligible person who desires to bargain." *Foreign Car Ctr., Inc.*, 129 NLRB 319, 320 (1960); *see also Baker Concrete Const., Inc. v. Reinforced Concrete Contractors Ass'n*, 820 F.3d 827, 831 (6th Cir. 2016), *and J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Loc. Union 1, AFL-CIO*, 398 F.3d 967, 973–74 (7th Cir. 2005), *as amended* (Mar. 28, 2005) (both citing *Foreign Car*, 129 NLRB at 320). The NLRA's collectivity principles are not articulated in § 8(f). Rather, they appear in other sections of the statute that govern all CBAs, § 8(f) and § 9(a) alike. *See, e.g.*, 29 U.S.C. § 157 ("Employees shall have the right . . . to bargain collectively . . . ."); *id.* § 159(a) ("Representatives . . . selected . . . by the majority of the employees in a unit . . . shall be the exclusive representatives of all the employees in such unit . . . ."). Indeed, as Trematore emphasizes on appeal, *Foreign Car*—a foundational one-employee-unit rule case—did not involve a § 8(f) agreement.

Since *Foreign Car*, the NLRB has permitted repudiation of § 9(a) agreements under the one-employee unit rule. *See, e.g.*, *Owens-Corning Fiberglas Corp.*, 140 NLRB 1323, 1326, 1332 (1963); *Stern Made Dress Co.*, 218 NLRB 372, 372, 378 (1975); *see also Bozeman Deaconess Found.*, 322 NLRB 1107, 1117 & n.9 (1997) (stating that the rule would have applied, except the bargaining unit actually consisted of more than one employee). At least one federal court has also permitted repudiation of a § 9(a) CBA under the one-employee unit rule. *See Motion Picture Projectionists &*

3

*Video Technicians, Loc. 110 v. Fred Corp.*, 845 F. Supp. 1255, 1259–60 (N.D. Ill. 1994). And no federal court has expressed a cogent, persuasive rationale for limiting the rule to § 8(f) agreements. The NLRA's principles of collectivity apply in all settings, not just in the construction industry and not just where there is a pre-hire agreement.

The majority holds that Trematore's repudiation was ineffective because the CBA obligated the parties to negotiate a renewal agreement. The majority adds that it has found no case where the one-employee unit rule was held to permit repudiation of a CBA with a non-repudiation clause or an interest arbitration clause.[2] But not all one-employee unit rule cases describe the relevant CBA in any depth. *See, e.g.*, *Laborers Health & Welfare Tr. Fund for N. Cal. v. Westlake Dev.*, 53 F.3d 979, 981 (9th Cir. 1995) (recounting only that the CBA "establishes, *inter alia*, wages, hours and working conditions, and requires Westlake to make fringe benefit contributions to the Trust Funds on behalf of employees covered by the agreement, and further binds Westlake to the provisions of the Trust Agreements").

While we cannot know the details of the CBAs in all the relevant cases, we do know that our sister courts have held that when the one-employee unit rule is properly invoked, "all of [the] statutory and contractual obligations under the CBA [are] terminated." *Baker*, 820 F.3d at 831; *see also J.W. Peters*, 398 F.3d at 974 (the one-employee unit rule permits an employer to "discontinue its duties under the agreement"); *Westlake*, 53 F.3d at 984 (holding the one-employee unit rule applied and "[t]he CBA in this case is therefore void"). So, in my view, the

---

[2] An interest arbitration clause provides that if the parties cannot reach agreement on a new CBA, they must enter arbitration pursuant to which a new contract will be imposed.

fact that the CBA here contained non-repudiation and interest arbitration clauses is not a bar to invocation of the one-employee unit rule.

For these reasons, I would hold that Trematore's refusal to negotiate a new CBA was permissible under both the applicable CBA and the law. I dissent from that portion of the majority opinion. As for the Felician grievance, Trematore committed the alleged unfair labor practice in May 2020 while the 2018/2021 CBA was still in effect. Therefore, I join the portion of the majority opinion holding that this grievance is arbitrable.